# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00285-CV

**Rickye Henderson, Appellant**

**v.**

**David Buttross, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-16-003023, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Rickye Henderson appeals a final summary judgment dismissing claims he had asserted against David Buttross regarding real estate transactions and associated foreclosure disputes. We will affirm the judgment in part and reverse and remand in part.

Although the parties have disputed numerous underlying facts, they concur generally as to the basic circumstances that gave rise to their litigation. In 2009, appellant Henderson and a second individual, Irving Lamont Alston, purchased a ten-acre tract in east Austin from David Anthony, Inc. (DAI), for $640,000. Henderson and Alston financed the purchase through a loan from DAI evidenced by a promissory note under which the two agreed to pay off the principal amount and interest through monthly installments. The note was secured by a vendor's lien and deed of trust in favor of DAI.

In addition to the land, the transaction conveyed improvements that included a warehouse-like building in which Henderson thereafter operated a business known as the "Ozone Events Center." In 2010, a fire severely damaged the improvements, with concomitant disruption to the business. Subsequently, citing alleged defaults by Henderson and Alston in performing their obligations under the note, counsel on DAI's behalf commenced the first of what would prove to be several uses or threatened uses of nonjudicial foreclosure remedies against the debtors. In response, Henderson, pro se, filed a lawsuit in which he disputed that any default had occurred and sought injunctive relief to bar foreclosure. He named as defendants both DAI and that entity's president, David Buttross, appellee here.

These four parties resolved their disputes, at least temporarily, through an April 2012 "Compromise and Settlement Agreement" that included a mutual release of claims and an agreement to effect modifications to the promissory note that Henderson and Alston had previously made with DAI. The modifications included a renewal and extension of the outstanding balance of the note, which the parties agreed was $228,335.11,[1] plus an additional $40,000 loan by DAI. The new $40,000 loan, plus interest, was to be paid off in monthly installments that were to conclude in April 2014. The remaining outstanding balance and accrued interest was to be paid off as a lump-sum or "balloon" payment due on December 31, 2015.[2]

---

[1] According to Henderson, the intervening change from the original $640,000 principal loan balance reflected a payment from insurance proceeds of approximately $320,000 and an agreed-upon reduction of another $100,000 in light of diminished property value.

[2] The deed of trust was correspondingly amended to secure the modified note.

There appears to be no dispute that Henderson paid off the $40,000 loan and associated interest in 2014. But in February 2015—before the remaining lump-sum payment came due—counsel on DAI's behalf gave notice of default, asserting that "the loan evidenced by the note is seriously delinquent." The "serious" delinquency, according to counsel, was $983.31 in "[p]ast late charges" and $250 in "attorney's fees" said to be owed, plus an alleged failure to pay, or to furnish proof of payment of, property taxes on the property. A March 2015 meeting ensued between Henderson, Buttross, and (for at least a portion of the meeting) Alston that produced what was facially a deed of the property in lieu of foreclosure from Henderson and Alston to DAI. This deed was recorded in the Travis County real property records.

However, DAI through counsel ultimately resumed the foreclosure process after purportedly discovering that Henderson, contrary to representations he had made in the deed, had allowed title to become clouded with a child-support lien, a state tax lien, and two abstracted judgments. A May 2015 substitute trustee's sale followed in which DAI repurchased the property for $319,000. Thereafter, in September of that year, DAI resold the property to third parties for $440,000.

Henderson—pro se, as before—filed another lawsuit, which ultimately gave rise to this appeal. He named as defendants DAI, "Buttross Properties" (later acknowledged to be a d/b/a for DAI), and Buttross individually. The gravamen of Henderson's complaints was that the defendants had effected sham foreclosures under color of nonexistent claimed defaults, depriving him wrongfully of the property, of hundreds of thousands of dollars in equity he had built through previous loan payments, and of additional profits from the sale of the property.

3

Henderson would remain without legal representation through final judgment and into the appellate stage, when, after filing his brief pro se, he—and this Court—benefitted from oral argument presented on his behalf by pro bono counsel. But by then, Henderson's struggles in representing himself amid the intricacies of Texas summary-judgment practice had already shaped this case's procedural posture in a manner adverse to him. And neither the district court nor this Court has power to overlook such ramifications in allowance for Henderson's pro se status, as we are bound to apply the same law and rules equally to him as we do to parties represented by counsel.[3]

After filing suit, Henderson managed to obtain service of process upon Buttross individually, but attempts made to serve DAI and "Buttross Properties" through counsel were met by a successful motion to quash defective service. Thereafter, Buttross through litigation counsel (a different lawyer than the one who had handled the foreclosure matters for DAI) filed a motion for summary judgment seeking dismissal of all of Henderson's claims against Buttross. The motion included a number of no-evidence challenges going to whether Buttross could be held personally liable for the complained-of acts. Buttross also attached evidence and included what were substantively some traditional summary-judgment grounds. Henderson filed a response with his own evidence.

---

[3] *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) ("There cannot be two sets of procedural rules . . . litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel." (citing *Stein v. Lewisville Indep. Sch. Dist.*, 481 S.W.2d 436 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.))).

Following a hearing, the district court granted Buttross's summary-judgment motion in full and ordered that Henderson take nothing on his claims.[4]  This ruling comprised a final judgment,[5] from which Henderson timely perfected this appeal.

---

[4]  The order specifically grants Buttross's "Motion for No-Evidence Summary Judgment," but we may also consider any traditional grounds Buttross has preserved. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) ("We hold that courts of appeals should consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal . . . [and] further conclude that the appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy." (citing predecessor to Tex. R. App. P. 47.1)).

[5]  While neither party has disputed these matters, some features of the summary-judgment order warranted our *sua sponte* verification of finality as it bears upon our jurisdiction over Henderson's appeal. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam) ("Neither party argues to this Court that the summary judgment was not a final, appealable order. Nevertheless, we are obligated to review *sua sponte* issues affecting jurisdiction." (citing *New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678 (Tex. 1990) (per curiam))).  The summary-judgment order, evidently drafted by Buttross's litigation counsel, grants the motion and adjudges "that [Henderson] take nothing by his claims as alleged in [Henderson's] Third Amended Petition."  The district court struck additional language proposed by counsel that would have continued, ". . . and that [Henderson's] suit against [Buttross] be dismissed with prejudice," and similarly struck a proposed "Mother Hubbard" clause.  The absence of *Lehmann*-type finality language in this summary-judgment order necessitated that we examine the record to determine whether the order had the substantive effect of disposing of all claims and parties in the case. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205–06 (Tex. 2001).  That determination, moreover, controls over any contrary indications that might otherwise be inferred from the deletions made by the district court. *Cf. id*. at 204 ("[A]n order can be a final judgment for appeal purposes even though it does not purport to be if it actually disposes of all claims still pending in the case.  Thus, an order that grants a motion for partial summary judgment is final if it in fact disposes of the only remaining issue and party in the case, even if the order does not say that it is final, indeed, even if it says it is not final.").  Upon examination of the record, we conclude that the summary-judgment order did in fact dispose of all claims and parties in the case, and is thereby final and appealable.

Henderson has acknowledged on appeal that his third amended petition was the operative pleading when the district court ruled on Buttross's motion.  Although Henderson filed a fourth amended petition prior to the summary-judgment hearing, he did so only six days prior to the hearing, past the seven-day deadline for amended pleadings, and without seeking or obtaining leave from the district court to do so. *See* Tex. R. Civ. P. 63 ("Parties may amend their pleadings, respond to pleadings on file of other parties . . . and file such other pleas as they may desire . . . provided, that

We review summary judgments de novo.[6] Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law.[7] We take as true any evidence favorable to the non-movant and indulge every reasonable inference

any pleadings, responses or pleas offered for filing within seven days of the date of trial . . . shall be filed only after leave of the judge is obtained . . . ."); *Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) ("A summary judgment proceeding is a trial within the meaning of Rule 63."). To the extent the summary-judgment order might be read to exclude any new allegations or claims that had been added by Henderson in his fourth amended petition (which consisted of a single paragraph making passing reference to an "alter ego" theory), Henderson would have made the order final nonetheless by subsequently filing a fifth amended petition that omitted this paragraph and otherwise reverted to the substance of his third amended petition.

Nor did Buttross have any pending affirmative claims for relief that would preclude finality. Buttross had moved for $250 in sanctions, but this request was merely conditional—he specified that the request should be considered "moot" if the district court proceeded to grant his summary-judgment motion.

Finally, while Henderson had continued to name DAI (both under that name and as "Buttross Properties") as a defendant in his third amended petition, he has acknowledged that he never served DAI and points to no indication in the record that he had intended to do so as of the time of the summary-judgment hearing. Under these circumstances, the summary-judgment ruling had the effect of a "discontinuance" of his claims against DAI. *See M.O. Dental Lab*, 139 S.W.3d at 674–75 (reaffirming *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962)). Consequently, the district court's order "that [Henderson] take nothing by his claims as alleged in [Henderson's] Third Amended Petition" disposed of the only pending claims and parties in the case, comprising a final and appealable judgment.

[6] *See Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

[7] *See* Tex. R. Civ. P. 166a(c); *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016).

from the evidence in the non-movant's favor.[8] The grounds relevant to this analysis are confined solely to those presented in the summary-judgment motion and response.[9]

With respect to no-evidence summary-judgment grounds, the burden is on the non-movant to present evidence raising a genuine issue of material fact as to the elements of claims or defenses that were challenged in the motion.[10] No-evidence motions are essentially pretrial directed verdicts, and we review them under the same legal-sufficiency standard.[11] That is, we will affirm a grant of a no-evidence motion when the record reveals a complete absence of evidence of a vital fact, rules of law or evidence prevent the court from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively establishes the opposite of a vital fact.[12] With "traditional" summary-judgment grounds, by contrast, the movant must first present evidence that establishes or negates a claim or defense as a matter of law.[13] Only if this burden is met must the non-movant present evidence to raise a genuine issue of material fact that would defeat summary judgment.[14]

---

[8] *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

[9] *See Henkel v. Norman*, 441 S.W.3d 249, 251 n.1 (Tex. 2014) (per curiam) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response." (quoting *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993))).

[10] Tex. R. Civ. P. 166a(i); *see also Lightning Oil Co.*, 520 S.W.3d at 45.

[11] *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

[12] *See id.*; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

[13] *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

[14] *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

The substantive thrust of Henderson's pro se appellate brief is that the summary-judgment record presented evidence sufficient to raise genuine issues of material fact as to the elements and claims Buttross had challenged. Henderson's pro bono counsel has refined these arguments further to focus on four theories of recovery Henderson had asserted—(1) breach of contract, (2) money had and received, (3) DTPA violations, and (4) statutory fraud. Counsel refers us to record excerpts tending to demonstrate discrepancies between Henderson's payment records and those of DAI, discrepancies that in turn tend to raise questions as to whether the asserted defaults ever truly occurred. (Indeed, when asked by this Court during oral argument, counsel for Buttross could not explain the precise origins or basis for the $983.31 in "[p]ast late charges" and $250 in "attorney's fees" claimed in the February 2015 notice of default.)[15] But an equally critical challenge for Henderson in the posture of this appeal is to demonstrate that his claims *as asserted against Buttross individually*, as distinguished from DAI, survive summary judgment.

As pleaded by Henderson, the factual bases for his breach-of-contract claim center on Buttross's alleged noncompliance with the 2012 amended note through the foreclosure of the property and failure to tender "excess proceeds" from the sale. Buttross asserted no-evidence grounds challenging the existence of any contract, or the breach of any contract, between Henderson and Buttross individually. As summary-judgment proof to meet his burden, Henderson points to a copy of the 2012 amended note. However, this document reflects that the sole parties were

---

[15] And Henderson, while still pro se, presented affidavit testimony implicating both himself and Buttross in a purported forgery of Alston's name on the March 2016 deed in lieu of foreclosure. While Buttross terms this allegation "bizarre," Henderson included a letter from the Court Reporter Certification Board reflecting that professional disciplinary action had been taken against the notary who had attested to Alston's signature.

Henderson and Alston on one hand and DAI on the other. Buttross, individually, was not a party.

While Buttross is an officer of DAI and apparently has some sort of ownership interest, DAI is considered to be a separate legal entity whose corporate form would "normally insulate[] shareholders, officers, and directors from liability for corporate obligations."[16] Texas law would impose corporate contract liability on a shareholder only if that shareholder expressly assumes liability or "cause[s] the corporation to be used for the purpose of perpetuating and did perpetuate an actual fraud on the obligee primarily for the direct personal benefit of the holder."[17] Henderson did not present evidence of either circumstance. He comes no closer than to argue, through his counsel on appeal, that the Compromise and Settlement Agreement had the effect of making Buttross individually liable for the alleged breaches of the 2012 amended note. Henderson emphasizes that (1) Buttross, individually, was a party to the Compromise and Settlement Agreement, alongside DAI; and (2) the parties to the Compromise and Settlement Agreement, including Buttross individually, agreed that the preexisting note would be modified and set forth the changes to be made. But while this is evidence that Henderson and Buttross formed a contract through the Compromise and Settlement Agreement, it remains that the 2012 amended note is the contract whose alleged breach is the source of Henderson's claimed injury. Although prescribing other changes to the note, the Compromise and Settlement Agreement did not purport to make Buttross a party to the note

---

[16] *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 n.29 (Tex. 2008); *see also Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations.").

[17] Tex. Bus. Orgs. Code § 21.223(b); *see also id.* § 21.225.

9

alongside DAI nor effect an assumption by Buttross of DAI's liability under it. Summary judgment was therefore proper on Henderson's breach-of-contract claim.

Henderson encounters similar problems with his money-had-and-received claim. To prevail on his claim for money had and received against *Buttross individually*, Henderson had the burden of proving that *Buttross individually* holds money that "in equity and good conscience" belongs to Henderson.[18] As the factual basis of that claim, Henderson alleged that Buttross wrongfully holds "at least $510,000.00 in payments and proceeds from [Henderson under the promissory note], $319,000.00 from the subsequent foreclosure sale of the Property, and $440,000.00 from the illegal sale of the property." Buttross's summary-judgment motion included a no-evidence ground putting Henderson to his proof that Buttross "personally ha[d] or receive[d] any funds which could be said to rightly belong to Mr. Henderson." Henderson did not present any such evidence. To the extent there was evidence concerning these transactions, it tended to show that the payments or proceeds went to or are held by DAI. The district court did not err in granting summary judgment as to Henderson's money-had-and-received theory.

But DAI's corporate veil is of much less assistance to Buttross in regard to Henderson's remaining claims for DTPA violations and statutory fraud. These claims are predicated

---

[18] *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (explaining that "[a] claim for 'money had and received' is equitable in nature" and, more precisely, is "a category of general assumpsit to restore money where equity and good conscience require refund" (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.), and citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007))).

principally on alleged misrepresentations made by Buttross to Henderson concerning the parties' respective rights under the 2012 modified note.[19]

Buttross did not assert a no-evidence ground to challenge Henderson's proof of each of the DTPA theories Henderson had pleaded. Instead, Buttross challenged whether Henderson had an evidentiary basis "upon which to impose personal liability upon Mr. Buttross *for the actions of [DAI]*,"[20] thereby accepting for purposes of analysis that the alleged misrepresentations may have been made by Buttross and were potentially a basis for DTPA liability, but would be attributable to DAI. This ground overlooks that under the DTPA, a person is personally liable for his or her violations of that statute even if committed within the scope of an agency relationship.[21] This is consistent with "Texas'[s] longstanding rule that a corporate agent is personally liable for his or her

---

[19] With respect to the DTPA, Henderson asserts that Buttross committed "laundry list" violations set forth in Texas Business and Commerce Code § 17.46(b)(5) ("representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"), (7) ("representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"), (12) ("representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law"), and (24) ("failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed"). Henderson also alleged that Buttross's actions were "unconscionable" in taking advantage of his lack of knowledge to a grossly unfair degree. *See* Tex. Bus. & Com. Code § 17.50(a)(3).

[20] Emphasis added.

[21] *See, e.g.*, *Miller v. Keyser*, 90 S.W.3d 712, 715–18 (Tex. 2002) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (op. on reh'g); *Light v. Wilson*, 663 S.W.2d 813, 815 (Tex. 1983) (Spears, J., concurring); Restatement (Second) of Agency § 348 (1958)).

11

own fraudulent or tortious acts."[22] Consequently, Buttross cannot obtain summary judgment as to his DTPA liability merely by relying on DAI's corporate veil.

And here the intricacies of Texas summary-judgment practice ultimately operate in Henderson's favor, as Buttross did not present any alternative summary-judgment ground that could support dismissal of Henderson's DTPA claims. Buttross attacks the sufficiency of Henderson's DTPA pleading, but "[s]ummary judgment based on a pleading deficiency is proper if a party has had an opportunity by special exception to amend and fails to do so,"[23] which was not the case with respect to Henderson's DTPA claims.[24] And Buttross's other arguments are either immaterial or simply undeveloped.[25] While we express no opinion as to whether Buttross may have other defenses or means of defeating Henderson's DTPA claims, he did not show himself entitled to summary judgment on this record.

---

[22] *Id*. at 717; *see also* Restatement (Third) of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct.").

[23] *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

[24] Buttross filed special exceptions to a second amended version of Henderson's petition but not to the third, and at no point did Buttross file special exceptions directed to the DTPA claim. *Cf.* Tex. R. Civ. P. 91 ("A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to.").

[25] Specifically, Buttross argues that Sections 5.069 through 5.071 of the Property Code provide no support for DTPA liability, but we do not understand Henderson's DTPA theories, as relevant to this appeal, to rely on those statutes. Buttross also makes a passing reference to limitations, an affirmative defense and traditional summary-judgment ground that must be supported by evidence, but Buttross did not develop its defense with evidence or argument. *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) ("A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." (citing *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997) (per curiam))).

The same is true of Henderson's statutory fraud claim. As to this claim, Buttross did not raise DAI's corporate veil as a summary-judgment ground. Instead, his arguments consisted merely of advocating inferences contrary to those that Henderson would have us draw from the evidence.[26] We are instead to indulge every reasonable inference from the evidence in Henderson's favor, as the non-movant,[27] and the ultimate resolution of competing inferences is reserved exclusively for the factfinder.[28] The district court therefore erred in granting summary judgment on that claim.

We affirm the district court's summary judgment dismissing Henderson's claims against Buttross for breach of contract and money had and received. But we reverse the judgment as to Henderson's DTPA and statutory fraud claims and remand those claims for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed in Part, Reversed and Remanded in Part

Filed: July 5, 2018

---

[26] After referencing the allegedly fraudulent inducements, Buttross advocates summary judgment on the basis that "it is impossible to conceive of any purpose served by such inducements or any benefit to Mr. Buttross."

[27] *See Lightning Oil Co.*, 520 S.W.3d at 45.

[28] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) ("Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony.").