STONEBRIDGE LIFE INSURANCE COMPANY (f/k/a J.C. Penney Life Insurance Company), J.C. Penney Direct Marketing Services, Inc., and AEGON Direct Marketing Services, Inc. (f/k/a AEGON Special Markets Group, Inc.), Petitioners,

v.

Gayle G. PITTS and Mary Vanderford, Respondents.

No. 06–0655.

Supreme Court of Texas.

Aug. 31, 2007.

Craig T. Enoch, J. David Brown, Joel Wilson Reese, Winstead Sechrest & Minick, P.C., Dallas, Frank Weathered, Dunn Weathered Coffey Rivera Kasperitis & Rodriguez, P.C., Corpus Christi, for petitioner.

Tamera L. Venzke, John P. Venzke, The Venzke Law Firm, L.L.P., David H. Berg, Berg & Androphy, Houston, Stephen Gardner, Law Office of Stephen Gardner, PC, Dallas, J.A. (Tony) Canales, Canales & Simonson, P.C., Corpus Christi, for respondent.

PER CURIAM.

Consumers brought this class-action suit for "money had and received" to recover premiums they were charged pursuant to an allegedly misleading telemarketing scheme involving accidental death and dismemberment insurance.[1] The trial court certified a statewide class, and the court of appeals affirmed. 236 S.W.3d 226. We conclude that individualized inquiry will predominate over common issues of proof, making the claim inappropriate for class certification. Accordingly, we decertify the class and remand the case to the trial court for proceedings consistent with this opinion.

Stonebridge Life Insurance Company[2] provides accidental death and dismemberment insurance nationwide through a uniform telemarketing effort. The company purchases personal information about potential customers, including their credit-card and bank-account numbers, from other businesses and credit-card issuers. Telemarketers then call those customers and, using a standardized script, describe the insurance and the enrollment process. The insurance is offered on a sixty- or ninety-day trial basis free of charge, during which time the customer can decide whether to keep or cancel the coverage. The customer is informed that the premi-

---

1. A claim for "money had and received" is equitable in nature. We have said that some equitable claims or defenses may be supplanted in certain contexts if an adequate legal remedy exists. *See BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 770 (Tex.2005) ("Like other equitable claims and defenses, an adequate legal remedy may render equitable claims of unjust enrichment and equitable defenses of voluntary-payment unavailable."). As Stonebridge does not contest the viability of the claimants' money-had-and-received claim in the context presented, we presume without deciding its availability in this case.

2. Stonebridge Life Insurance Company (f/k/a J.C. Penney Life Insurance Company), J.C. Penney Direct Marketing Services, Inc., and AEGON Direct Marketing Services, Inc. (f/k/a AEGON Special Markets Group, Inc.) were all named as defendants in the suit. We refer to them collectively as "Stonebridge."

um will be automatically charged to the customer's credit card or bank account when the "bonus" period ends unless the customer calls to cancel coverage. Customers who indicate they want the insurance are transferred to a licensed agent who enrolls them in the program. The agent confirms the customer's understanding that the coverage is provided at no cost during the "bonus" period, and explains that unless the coverage is cancelled before the "bonus" period expires the premium will be charged to the customer's account every month. Although the customer is told which account Stonebridge will charge, the agent does not disclose that Stonebridge already has the specific account information or explain that there will be no further contact from the company before the account is charged.

Gayle G. Pitts and Mary Vanderford brought this suit against Stonebridge on behalf of a class of insurance customers who enrolled through the telemarketing program. The class representatives claim they were never informed that the company already had their credit card or bank account information, nor were they told there would be no further contact before their accounts were charged for premiums when the trial period ended. The class seeks restitution of insurance premiums based on a single liability theory—"money

had and received." The trial court certified a statewide class,[3] identifying the common liability issue as:

[D]id the Defendants obtain money from the Plaintiffs by charging their credit cards or debiting their bank accounts for accidental death and dismemberment insurance premiums which in equity belongs to the Plaintiffs?

The court of appeals affirmed the trial court's certification order. 236 S.W.3d 226.

The class members claim they were each subjected to essentially the same telemarketing effort and initially consented to the trial program, and contend the only issue in the case is whether Stonebridge charged their credit cards or debited their bank accounts for premiums which "in equity and good conscience" belong to the class members. Because Stonebridge's liability turns exclusively on the answer to that question, the class argues, common issues predominate over individual issues in the case. Stonebridge, on the other hand, contends class certification is inappropriate because the equitable claim the class members assert requires resolution of individual issues that will predominate at trial. We agree with Stonebridge.

■ This Court reviews a trial court's decision to certify a class under an abuse

**3.** The trial court initially certified a nation-wide class asserting claims for conspiracy, "money had and received," and violations of the Texas Theft Liability Act. Tex. Civ. Prac. & Rem.Code § 134.001. The court of appeals reversed and remanded the certification order, holding that the trial court had failed to analyze potential conflicts of law among the fifty states. *See J.C. Penney v. Pitts*, 139 S.W.3d 455, 461–62 (Tex.App.-Corpus Christi 2004, no pet.). The petition was amended on remand to assert only a money-had-and-received claim on behalf of Texas consumers. The class is defined as:

All individuals in Texas, (1) from whom Defendants received premium payments for

accidental death and dismemberment (ADD) insurance from November 28, 1996, until the date of certification, (2) by means of either a credit card charge or bank account debit initiated by any Defendant, (3) after a telemarketing contact initiated by Defendants, (4) who did not provide written authorization prior to Defendants' receipt of payment, and (5) who have not made a claim or received benefits due to making any claim from Defendants under any ADD policy.

The trial court certified the amended class which is the subject of this appeal.

of discretion standard, but does so without indulging every presumption in favor of the trial court's decision. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002); *see Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 434-35, 439 (Tex.2000). Actual conformance with Rule 42 is indispensable, and compliance with the rule must be demonstrated, not presumed. *Schein*, 102 S.W.3d at 689-90 (citing *Bernal*, 22 S.W.3d at 434-35).

■ Because predominance is one of the most stringent prerequisites to class-action certification, it is considered first in our review and must be rigorously applied. *See Bernal*, 22 S.W.3d at 433-35; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The predominance requirement prevents class certification when complex and diverse individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present otherwise viable claims or defenses. *Schein*, 102 S.W.3d at 690; *Bernal*, 22 S.W.3d at 434. Certification is not appropriate unless it is determinable from the outset that the individual issues can be considered in a manageable, time-efficient and fair manner. *Schein*, 102 S.W.3d at 688 (citing *Bernal*, 22 S.W.3d at 435). Predominance under Rule 42(b)(3) is satisfied when common questions of law or fact will predominate over questions affecting only individual members. *Schein*, 102 S.W.3d at 694; *Bernal*, 22 S.W.3d at 433. "The test for predominance is not whether common issues outnumber uncommon issues but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Bernal*, 22 S.W.3d at 434 (quoting *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 610 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.)). To evaluate predominance, we identify the substantive issues

that will control the litigation, assess which issues will predominate, and determine if the predominating issues are, in fact, those common to the class. *Bernal*, 22 S.W.3d at 434.

■ The class contends the facts in this case present the precise scenario for which class actions were designed. However, due process requires that class actions not be used to diminish the substantive rights of any party to the litigation. *See Schein*, 102 S.W.3d at 693; TEX.R. CIV. P. 815; *see also In Re Ethyl Corp.*, 975 S.W.2d 606, 613 (Tex.1998) ("The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation.") (quoting *In Re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir.1992)). The opportunity to adequately and vigorously present material defenses lies at the very core of the adversarial process and the right to a fair trial, and may not be disregarded for reasons of convenience or economy. *Schein*, 102 S.W.3d at 693; *Bernal*, 22 S.W.3d at 437; *see also In re Ethyl Corp.*, 975 S.W.2d at 613.

In this case, the only cause of action that the class asserts is for "money had and received." Stonebridge does not argue in this appeal that no class member can state a viable claim. *Cf. State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 557 (Tex.2004). Because the plaintiffs' claim is equitable in nature, the defendant may present any facts and raise any defenses that would deny the claimant's right or show that in equity and good conscience the claimant should not recover. *See Stone v. White*, 301 U.S. 532, 535, 57 S.Ct. 851, 81 L.Ed. 1265 (1937); *B & R Devel., Inc. v. Rogers*, 561 S.W.2d 639, 643 (Tex. Civ.App.-Texarkana 1978, writ ref. n.r.e.)

(citing *Red Ball Motor Freight, Inc. v. Bailey,* 332 S.W.2d 411 (Tex.Civ.App.-Amarillo 1960, writ ref'd n.r.e.)).

Equitable defenses raise important substantive issues that may have a significant effect on class-action litigation. *See BMG Direct Mktg., Inc.,* 178 S.W.3d at 777. Evidence that individual class members understood they would be charged without further notice, or that individual members consented to the charges after they were made, or that a policy holder wanted the coverage irrespective of how premiums were charged, would be relevant to this assessment. For example, Stonebridge points to one former class representative who, after receiving his certificate of insurance from Stonebridge, marked on the envelope that the insurance was "updated [and] good, because it is being paid through my Diamond Shamrock credit card every month." Another customer called Stonebridge to inquire about the beneficiary designation under her policy, and her husband admitted that she purposefully bought the insurance. These examples suggest that at least some customers understood they were being charged for premiums by Stonebridge and wanted the insurance. At this juncture, it is impossible to determine how many other customers may have knowingly consented to the charges. But with an estimated class size of some 1.5 million, the vast majority of the litigation could be spent trying to determine which individuals should recover their premiums under the equities presented and which should not.

The court of appeals concluded that, because each class member was subjected to a common telemarketing effort with virtually indistinguishable telemarketing scripts, liability in each instance would turn exclusively on whether Stonebridge's reliance on each class member's enrollment in the trial program to debit their accounts was equitable and just. 236 S.W.3d at 234. Settling this issue for the class representatives, the court reasoned, would settle the issue for the entire class. We disagree.

In *Bernal,* we rejected the "certify now and worry later" approach, holding it is improper to certify a class when it cannot be determined from the outset that individual issues can be considered in a manageable, time-efficient, and fair manner. 22 S.W.3d at 435–36. In *Bernal,* each class member alleged injuries arising from the same explosion. *Id.* at 428–29. Although it was apparent from the outset that significant common issues existed—such as the defendant's liability for the explosion itself and whether the materials the explosion released were capable of causing the alleged harm—the predominance requirement was not satisfied. *Id.* at 436–37. We concluded that liability could not be fairly established without resolving highly individualized issues, such as each class member's age, activity and location at the time of the explosion, all of which would be essential to establishing causation and damages. *Id.* The likely presence of significant individualized inquiries as to damages, causation and material defenses in mass-accident litigation renders such cases generally inappropriate for class-action treatment. *Id.* at 436.

As in *Bernal,* it is determinable from the outset that this case involves material issues common to the entire class, such as Stonebridge's uniform telemarketing tactics and automatic billing of premiums without further customer contact. But also as in *Bernal,* there are inescapably individual differences between each class member's experience with Stonebridge that could determine in whose favor the equities weigh in resolving their claims. Just as fairness and manageability concerns made *Bernal* inappropriate for class

certification, the important and diverse individual issues involved in evaluating the class members' money-had-and-received claim compel the same result.

Assuming that Stonebridge's marketing tactics are unfair or misleading as the class representatives allege, the equitable claim they assert entitles Stonebridge to bring forth facts or defenses that tend to show the policy premiums "in equity and good conscience" belong to the company under the particular circumstances of each case. *See Stone,* 301 U.S. at 535, 57 S.Ct. 851; *Rogers,* 561 S.W.2d at 643. At least one court has concluded that equitable claims for "money had and received" are uncertifiable for this very reason:

> [I]n order to prevail on ["money had and received"], the plaintiffs will have to establish that they paid money to the defendants, either by mistake or fraud, that, in equity or good conscience, should be returned to the plaintiffs. This theory of recovery, therefore, requires individualized inquiry into the state of mind of each plaintiff.

*Funliner of Ala., L.L.C. v. Pickard,* 873 So.2d 198, 211 (Ala.2003); *see also Smart Prof. Photocopy Corp. v. Childers–Sims,* 850 So.2d 1245, 1250 (Ala.2002).

We conclude that the class representatives in this case failed to prove at the outset that individual issues can be considered in a fair, manageable, and time-efficient manner on a class-wide basis. Accordingly, Rule 42(b)(3)'s predominance requirement is not satisfied, and the trial court erred in certifying the class. Because the predominance requirement is not met, we do not reach the other issues Stonebridge raises.

Accordingly, without hearing oral argument pursuant to Rule 59.1 of the Texas Rules of Appellate Procedure, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.