# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00664-CV

Acme Iron & Metal Company, a d/b/a of Txalloy, Inc.; and
Mayfield Paper Company, Inc., Appellants

**v.**

Republic Waste Services of Texas, Ltd.,
sometimes d/b/a Trashaway Services and Duncan Disposal, Appellee

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B140226C, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal of an order of the trial court denying a motion to certify a class filed by plaintiffs below—Acme Iron & Metal Company (Acme), a d/b/a of Txalloy, Inc., and Mayfield Paper Company, Inc. (Mayfield) (collectively, Plaintiffs). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3) (permitting interlocutory appeal of order refusing to certify class); Tex. R. Civ. P. 42 (outlining procedures and requirements for class certification). Plaintiffs filed suit against appellee Republic Waste Services of Texas, Ltd. (Republic), sometimes d/b/a Trashaway Services and Duncan Disposal, for breach of contract and other claims associated with Republic's provision of waste-collection services to commercial customers in the City of San Angelo (the City). For the following reasons, we will affirm the trial court's order denying class certification.

## BACKGROUND

The City and Republic executed a waste-disposal-services contract in February 1989 (the 1989 Contract) for a ten-year term, which was extended for an additional five years, until 2004. The 1989 Contract provided Republic a "non-exclusive" "privilege" to provide commercial waste-collection services in the City and provided that Republic "shall contract directly with its commercial customers as to the terms of removal and disposal of solid waste." The 1989 Contract provided that rates for commercial customers were to be "established with the City." By contrast, rates for residential customers would be "established by ordinance or resolution of the City Council."

Effective August 1, 2004, the City and Republic executed a new, ten-year contract (the 2004 Contract) for the provision of residential and commercial waste services. In contrast to the prior contract, the 2004 Contract provided Republic "the exclusive right, privilege, and permit . . . [to] engage[] in the business of waste collection and disposal," unless a commercial entity obtained its own hauling and disposal permit. Unlike the prior contract, the 2004 Contract also provided that Republic "will be responsible for billing and collection of all charges for commercial service in accordance with the rates for commercial waste collection service established by City ordinance or resolution."

After the 2004 Contract expired, the City requested proposals for a new ten-year waste-collection-services contract. Proposals were submitted by Republic and one other company. In the bid-review process, the City's auditor raised questions about Republic's historical calculations of certain fuel-surcharge and environmental fees under its prior contracts. Republic engaged an accounting firm to conduct an audit of its commercial billing statements in response to the City's

2

concerns and ultimately publicly stated that it would fully refund its commercial customers "any fees incorrectly charged to their accounts."

Three days after Republic's public statement, Plaintiffs filed a lawsuit against it. The lawsuit alleged that Republic had charged Plaintiffs and other similarly situated commercial customers unauthorized "Fuel/Environmental Recovery Fees" for years. Plaintiffs sought damages and attorney's fees on their claims against Republic for breach of contract, unjust enrichment, violations of the Deceptive Trade Practices Act (DTPA), fraud, and negligent misrepresentation. About a month after Plaintiffs filed their lawsuit, the City awarded the contract to Republic.

Plaintiffs filed a motion for class certification, seeking to certify two subclasses: (1) class members charged allegedly unauthorized fees by Republic between March 2000 and July 2004 (the 2000 Subclass) and (2) class members charged allegedly unauthorized fees by Republic between August 2004 and July 2014 (the 2004 Subclass). Republic filed a motion for summary judgment on all of Plaintiffs' claims. The trial court conducted a single hearing on both Plaintiffs' motion to certify and Republic's motion for summary judgment. The trial court denied Plaintiffs' motion for class certification, concluding that Plaintiffs failed to establish any of the requirements under Rule 42(a) and (b). *See* Tex. R. Civ. P. 42(a), (b). Without signing a separate order, the trial court made a docket entry that it granted summary judgment regarding Plaintiffs' "2004 Claims" but denied it regarding their "2000 Claims." Plaintiffs brought this interlocutory appeal from the denial of their certification motion.

3

## STANDARD OF REVIEW

Appellate courts review a class-certification order for abuse of discretion. *Bowden v. Phillips Petrol. Co.*, 247 S.W.3d 690, 696 (Tex. 2008); *Compaq Comp. Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Bowden*, 247 S.W.3d at 696. A trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure by the court to correctly analyze or apply the law will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

A party seeking to reverse an order denying class certification must demonstrate that Rule 42's requirements are satisfied and that the "trial court's refusal to certify the class was legally unreasonable under the facts and circumstances of the case." *Ridgeway v. Burlington N. Santa Fe Corp.*, 205 S.W.3d 577, 581 (Tex. App.—Fort Worth 2006, pet. denied). "Actual conformance with Rule 42 is indispensable, and compliance with the rule must be demonstrated, not presumed." *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007).

"Even if certification would have been proper, a denial may still not be an abuse of discretion," *see Vinson v. Texas Commerce Bank-Hous., Nat'l Ass'n*, 880 S.W.2d 820, 824 (Tex. App.—Dallas 1994, no writ), because "[s]o long as the trial court acted rationally in the exercise of its discretion, [a Texas court of appeals] will uphold its ruling denying certification," *City of Aledo v. Brennan*, No. 02-14-00147-CV, 2016 WL 3157354, at *5 (Tex. App.—Fort Worth June 2, 2016, pet. denied) (mem. op.). The Texas Supreme Court has rejected a "certify now and worry later" approach. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000).

4

**DISCUSSION**

Under Texas law, "there is no right to litigate a claim as a class action." *Id.* at 439. "Rather, Rule 42 provides only that the court may certify a class action if the plaintiff satisfies the requirements of the rule." *Id.* For this reason, a party seeking to reverse an order denying class certification faces a "formidable task." *Ridgeway*, 205 S.W.3d at 581; *see Solotko v. LegalZoom.com, Inc.*, No. 03-10-00755-CV, 2013 WL 3724770, at *3 (Tex. App.—Austin July 11, 2013, pet. denied) (mem. op.). Plaintiffs bore the burden of establishing all prerequisites for class treatment. *Lapray*, 135 S.W.3d at 672.

All class actions must satisfy the four threshold requirements in Rule 42(a) of the Texas Rules of Civil Procedure: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Tex. R. Civ. P. 42(a); *see Bernal*, 22 S.W.3d at 433. In addition to the subsection (a) prerequisites, class actions also must satisfy at least one of the subdivisions of Rule 42(b). *See* Tex. R. Civ. P. 42(b) (directing that only certain kinds of actions can be class actions); *Bernal*, 22 S.W.3d at 433. To satisfy the subsection (b) prerequisites, Plaintiffs sought to demonstrate that (1) common questions of law or fact predominate over questions affecting only individual members and (2) class treatment is "superior to other available methods for the fair and efficient adjudication of the controversy." Tex. R. Civ. P. 42(b)(3); *Bernal*, 22 S.W.3d at 432.

The propriety of certification must be analyzed with respect to each respective subclass. *Bowden*, 247 S.W.3d at 698–709 (analyzing whether it was appropriate to certify three separate subclasses); *see also Capital One Bank v. Rollins*, 106 S.W.3d 286, 289, 294 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (separately analyzing each subclass under *Bernal*). The trial court determined that Plaintiffs failed to satisfy each of the foregoing prerequisites with respect to both subclasses. Because it was Plaintiffs' burden to satisfy each prerequisite, to prevail on appeal they must show that the trial court's ruling was erroneous as to each one. We begin by considering whether the trial court abused its discretion in determining that Plaintiffs did not meet their burden to establish predominance.

Courts determine if common issues predominate by identifying the substantive issues that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class. *Bernal*, 22 S.W.3d at 433–34 (noting that predominance requirement is "one of the most stringent prerequisites to certification" and is "far more demanding than the commonality requirement" (internal quotes omitted)); *see also Stonebridge Life Ins.*, 236 S.W.3d at 205 ("Because predominance is one of the most stringent prerequisites to class-action certification, it is considered first in our review and must be rigorously applied."). "The test for predominance is not whether common issues outnumber uncommon issues but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Bernal*, 22 S.W.3d at 434 (quoting *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 610 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.)). We will consider the trial court's conclusions regarding each subclass separately.

6

*The 2004 Subclass*

In their motion to certify, Plaintiffs concede that the 2004 Subclass has no actual damages due to the fact that Republic has made full refunds to Plaintiffs of the charges incurred between 2004–2014:

> Plaintiffs' request for certification of the 2004 Subclass is made based on a good-faith argument for the extension, modification, or reversal of existing law. Under current Texas law, Plaintiffs do not have actual damages for the claims included in the 2004 Subclass, due to Republic's refund of the overcharges for that time period. Plaintiffs acknowledge that this Court is bound by the existing law. . . . Plaintiffs . . . acknowledge that existing precedent would foreclose their substantive claims regarding the 2004 Subclass. . . . Plaintiffs thus do not seek recovery in this lawsuit of any such unauthorized charges under the 2004 Contract.

Rather than seeking damages, Plaintiffs seek to reform Texas law and policy by litigating this case to the Texas Supreme Court to ask for a rule of law that allows lawsuits solely for punitive damages and attorney's fees; they pursue this reform because "the current law actually provides an incentive" for behavior like Republic's that "assess[ed] improper and illegal charges for years, and only refund[ed] those charges once its misconduct became public knowledge."

Plaintiffs' concession that the 2004 Subclass's claims are not cognizable under current law supports the trial court's reasonable conclusion that the claims "fail as a matter of law." Furthermore, because the 2004 Subclass has suffered no damages it has no legally cognizable injury, and the potential subclass members therefore have no standing. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484–85 (Tex. 2018) (reiterating constitutional standing test, which requires concrete injury to plaintiff and real controversy to be decided by court). Accordingly, we conclude that the trial court's refusal to certify this subclass was not legally unreasonable under these

7

circumstances, and the trial court therefore did not abuse its discretion in its ruling pertaining to the 2004 Subclass.

*The 2000 Subclass*

The trial court found that "there are no issues of fact or law common to the putative class members that are relevant to the claims of the 2000 Subclass." In contrast, the trial court found that there are forty-two "individual questions of fact or law [that] affect each individual class members' claims and would have to be separately determined for each individual class member," which "will be the object of most of the efforts of the litigants and the Court." These questions include the following:

- What are the terms of each individual class member['s] contract[] with Republic?

- Did Republic breach the terms of each individual class member's contract with Republic with respect to the amounts that Republic charged for waste collection services?

- What was the difference, if any, between (a) the amount Republic and each class member agreed would be charged for waste collection services; and (b) the amount Republic did charge each class member for waste collection services?

- When did each individual class member's causes of action accrue?

- When did each individual class member know, or should have known in the course of reasonable diligence, that Republic's charges were allegedly above what Republic and the individual class member agreed would be charged for waste collection services?

- Did each individual class member's original contract with Republic change or introduce a new or different element but leave the general purpose and effect unchanged?

8

The trial court concluded that "[c]ommon issues do not predominate" because "individual determinations of fact relating to liability, affirmative defenses, and damages will have to be decided separately for each individual class member."

There is support in the record for this conclusion. For instance, there was evidence that Republic's provision of waste services to commercial customers and its charges therefor were individualized, varying from month to month and among customers. A sample comparison of customers' invoices indicates that some customers were assessed a fuel surcharge beginning in March 2000; others were assessed the surcharge beginning later that year. Over the next few years, Republic modified its billing practices, at times incorporating the fuel surcharge into the monthly charge, and at other times separately delineating the surcharge, basing the amount on several variables and causing the surcharge amount to change each month for each customer. Given these variations, it follows that each putative class member's alleged damages would have to be calculated on the basis of invoice-by-invoice fact finding, which would likely be an arduous process in light of the approximate number of proposed class members (more than 5,000).

Republic's expert witness, who performed the calculations supporting Republic's refunds for the 2004–2014 period, opined that to determine each subclass member's damages, a fact finder would be required to determine the particular services that each plaintiff received for each invoiced month (over the course of several years), the amount of any allowable fuel fees for that month and for those services, and the fuel fee that the plaintiff paid. Differences among customers' services and billing issues include: container type and size, frequency of pick-ups, and applicable exemptions from franchise and sales taxes. These individual billing issues likely prevent a uniform

9

damage calculation for the subclass. "Where the plaintiffs' damage claims focus almost entirely on facts and issues specific to individuals rather than the class as a whole, the potential exists that the class action may degenerate in practice into multiple suits separately tried. In such cases, class certification is inappropriate." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) (holding that individualized damages issues can render class certification improper).

There was also evidence that putative class members potentially had different contracts with Republic with different terms—if the members even had contracts at all—as the 1989 Contract between the City and Republic contemplated that Republic would "contract directly with its commercial customers as to the terms of removal and disposal of solid waste." For instance, Mayfield had a written customer service agreement with Republic, but Acme had an "unwritten contract," as did about 2,000–4,000 customers, according to the testimony of Acme's owner. Some of Republic's commercial customers contracted individually with it, while others contracted with it through brokers, and still others contracted with Republic's national office for nationwide or regional services. Some of Republic's customers had multiple waste containers in service at the same time while others did not. Additionally, some customers were only "temporary," using Republic's services on an as-needed monthly basis rather than under an ongoing service contract.

Plaintiffs' broad class definition for the 2000 Subclass necessarily includes the entire gamut of commercial customers who contracted with Republic between 2000–2004: customers who contracted for only one or a few months, those who contracted for several months, those who contracted for the entire period, and those who contracted for every variation of periods in between. Plaintiffs offered no plan for how they would demonstrate, on a class-wide basis, that every customer

10

within the subclass definition had the same contract, on the same terms, and for the same time period. Given that Plaintiffs did not demonstrate how they would uniformly establish the existence or terms of each customer's contracts with Republic, it is unlikely that they could uniformly establish that Republic breached such agreements; a determination of whether Republic imposed any excessive charges on a customer would depend on what fees that customer's contract permitted Republic to charge at any given time. Those permissible charges depend, in turn, on which particular agreement regarding charges existed between the City and Republic under the 1989 Contract, as those amounts presumably varied over time rather than were set by ordinance as under the 2004 Contract.

The predominance requirement is one of the "most stringent" prerequisites to class certification, and it is intended to prevent class-action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205. "Certification is not appropriate unless it is determinable from the outset that the individual issues can be considered in a manageable, time-efficient and fair manner." *Id.*

On this record, and given the deferential standard by which we must review orders denying certification, we cannot say that the trial court acted unreasonably in concluding that the proposed subclass did not meet the predominance requirement.[1] *See Ridgeway*, 205 S.W.3d at 581

---

[1] The record supports several of the trial court's other findings of individualized factual and legal issues raised by Plaintiffs' claims and Republic's defenses that predominate over common issues. For instance, the trial court determined that the factual issues raised by Plaintiffs' pleading of the discovery rule to toll the statute of limitations, which would otherwise bar the claims of the 2000 Subclass, "would require individualized determination of the knowledge of class member[s] with respect to the alleged injury at issue." We need not detail in this opinion these additional factual and legal issues pertaining to the predominance requirement, as the issues we have already

11

(noting that appellant seeking to reverse order denying certification must demonstrate that Rule 42's requirements are met and that trial court's refusal to certify was "legally unreasonable" under facts and circumstances); *Domizio v. Progressive Cty. Mut. Ins. Co.*, 54 S.W.3d 867, 876 (Tex. App.—Austin 2001, pet. denied) ("The grant or denial of class certification will be upheld on appeal so long as the trial court acted rationally in the exercise of its discretion."). Accordingly, we hold that the trial court did not abuse its discretion in denying Plaintiffs' motion to certify the 2000 Subclass.

## CONCLUSION

Because we conclude that the trial court acted within its discretion by denying Plaintiffs' motion for class certification, we affirm the trial court's order.

_____

David Puryear, Justice

Before Justices Puryear, Bourland, and Toth

Affirmed

Filed:   December 12, 2018

_____

discussed amply support the trial court's reasonable exercise of discretion with respect to the predominance requirement. *See* Tex. R. App. P. 47.4 (Memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").