In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00029-CV
_____

AMERICAN GENERAL LIFE INSURANCE COMPANY,
Appellant

V.

ANNA DICKSON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
Appellee

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-195,107

## MEMORANDUM OPINION

In this interlocutory appeal, American General Life Insurance Company argues the trial court abused its discretion in granting the plaintiffs' motion certifying a class action consisting of two equitable claims, the first a claim for money had and received and another for unjust enrichment. Based on the allegations in the pleadings and if it

1

prevailed, American General would have to disgorge the money it earned on the life insurance policies it issued during the *class period* as that term is defined in the trial court's order to the policyowners whose named beneficiaries or whose heirs became members of the class.[1]

Relying on Rule 42(b)(3), the trial court conducted a hearing and certified a class of equitable claims involving life insurance policies issued by American General in the class period, named Anna Dickson as the representative for the class, which allowed the claims Dickson asserted against American General to proceed as a class.[2] Yet among Rule 42's many hurdles to certification, Rule 42(b)(3) requires that trial courts find "the questions of law or fact common to the class predominate over any questions affecting only individual members, and [prove] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[3] That requirement of Rule 42—call it

[1]To be clear, the plaintiffs never claimed or argued American General withheld the face amounts on the policies it issued after the named beneficiaries or heirs to the life insurance policies filed claims and American General offered to pay the claims. *See* Tex. Ins. Code Ann. § 1103.104(a) ("Interest on the proceeds of a life insurance policy accrues from the date the company that issues the policy receives due proof of loss until the date the company accepts the claim and offers to pay.").

[2]Tex. R. Civ. P. 42(b)(3).

[3]*Id.*

the Predominance Requirement—is often a difficult hurdle to clear and is particularly difficult when the class representative is asserting equitable claims.[4] For the reasons explained below, we hold the trial court abused its discretion in certifying Dickson's claims as a class.

Background

For convenience, we focus on the Predominance Requirement.[5] To begin, we note the parties do not contest that American General, as the successor of All American Life Insurance Company, issued a policy of life insurance to Robert Lamar Damrel. In the proceeding below, the trial court appointed Damrel's daughter, Anna Dickson, as the representative of the class. We will briefly describe Dickson's claims since we assume her claims are typical to those of the class for the purposes of the order American General is challenging in its appeal.[6]

In June 1985, Dickson's father, Robert Damrel, purchased the policy on which Dickson bases her claim. The record shows that summer,

---

[4]*See Best Buy Co. v. Barrera*, 248 S.W.3d 160, 163 (Tex. 2007) (reversing order certifying a class claim for money had and received); *Stonebridge v. Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 206-07 (Tex. 2007) (reversing order certifying a class claim for money had and received).
[5]Tex. R. Civ. P. 42(b)(3).
[6]*Id*. 42(a)(3).

Damrel filled out an application for a life insurance policy that would pay $48,133 in the event of his death. He named First Bank & Trust as the beneficiary of the policy, and he assigned the policy to the bank.[7] We assume Damrel used the policy as collateral for a loan he obtained from First Bank & Trust. While the application contains a line for an applicant to list contingent beneficiaries of the policy, Damrel did not list anyone as a contingent beneficiary in his application.

Later that month, All American Life Insurance Company of Texas issued a life insurance policy to Damrel, which insured Damrel's life for $48,133.[8] The policy is identified as Policy Number C001626. In January

---

[7]We have used the word *apparently* in the above sentence because the record does not include the documents Damrel signed when he closed on the loan. When Dickson sued, First Bank & Trust no longer existed, as the bank was sold in 1998 to another bank. Over the next eleven years, the shares in the successor bank were acquired and merged into three other banks, ending in 2009 with Wells Fargo Bank. In 2012, Wells Fargo sent American General a letter stating that "the loan files which had been transferred from First Bank & Trust have been lost and there is no loan owed by Robert Damrel to First Bank & Trust or to Wells Fargo Bank, NA." Even though Wells Fargo no longer has documentation on Damrel's loan, it released any claims it might have under Policy C001626, certified that any lien held by First Bank & Trust had been satisfied and assigned "any interest we ever had in the policy of insurance issued by American General Life Insurance Company to the heirs of Robert L. Damrel, Deceased."

[8]Although a company named All American Life Insurance Company apparently issued the life insurance policy that Damrel bought in 1985,

1996 Damrel died. But after Damrel died, neither First Bank & Trust, its successors, nor Damrel's wife, Concetta Damrel, ever filed claims with American General against Policy Number C001626.[9]

In May 2011, under an agreement American General reached with the Texas Department of Insurance and regulators in several other states, American General compared the Social Security Master Death File against the names of the policyowners of record it maintains to determine whether life insurance proceeds might be payable under some of the policies it had issued that had not yet been claimed by beneficiaries or heirs of the policyowners that could have not claimed escheat to a state. As part of that process, in 2012 American General sent a letter addressed to the "FAMILY OF ROBERT DAMREL" to Robert Damrel's last known address in Beaumont.[10] Jamie Carter was living there when American General mailed the letter, which stated that American General was trying to confirm whether the records of the Social Security

the evidence shows that All American Life Insurance Company was merged into American General Life Insurance Company before Damrel's daughters filed the suit.

[9]Concetta Damrel died on March 23, 2006.

[10]Damrel's death certificate is in the record. Dickson and Carter included the death certificate in the documents they filed when responding to American General's Motion for Summary Judgment.

Administration indicating that Robert Damrel had died were correct. The letter also states that according to American General's records, Damrel was insured by American General under Policy Number C001626, a policy in which Damrel named "FIRST BANK AND TRUST OF GROVES TEXAS" as the beneficiary.

Upon receiving the letter, Dickson and Carter both sent American General formal proofs of death. In them, Dickson and Carter certified that Damrel died in January 1996, they represented that they were his daughters, and that the policy American General issued was lost.[11] Besides filing claims consisting of the proofs of death, Carter and Dickson signed affidavits. In them, both stated they did not

> locate any information concerning the loan agreement which caused [their] father to take out the life insurance policy in the first place. We know that First Bank & Trust does not exist any longer. Further, we know that if First Bank & Trust ever had a loan outstanding payable by my father to First Bank & Trust, that loan would have been barred by . . . limitations . . . years ago. My sister and I are asking you to issue a check for the benefits of the life insurance policy to us jointly. If not, the benefits should be paid to our father's estate for ultimate division between my sister and me.

---

[11]Carter sent American General a proof of death more than two months before Dickson sent hers.

In the same affidavits, Dickson and Carter swore their mother, Concetta Damrel died in 2006, explaining they had "inherited [her] estate, including the life insurance benefits."[12]

After American General received the proofs of death and affidavits from Damrel's daughters, American General sent their attorney a letter stating that before issuing checks against Damrel's policy to Carter and Dickson, it would require Wells Fargo Bank (formerly known as First Bank & Trust) to sign a release of assignment. On July 26, 2012, Wells Fargo released American General from "any interest it has to the insurance policy that was issued by American General Life Insurance Company on the Life of Robert L. Damrel." In the same instrument, Wells Fargo assigned any interest it had in Policy Number C001626 "to the heirs of Robert L. Damrel, Deceased."

---

[12]Nothing in the record shows that First Bank & Trust released Damrel from the assignment before the bank was sold to another bank, that First Bank & Trust (or Damrel) ever changed the beneficiary on Policy Number C001626, or that Damrel ever named a contingent beneficiary on his policy. And Carter and Dickson both testified in depositions that were taken after American General paid the claim that until 2012 when they received the letter from American General and learned their father bought a policy of life insurance from American General, they were unaware he owned the policy.

Less than sixty days after Wells Fargo released its interest in the policy, American General sent Carter a check representing her half in the face amount of the policy plus the statutory interest it owed, which it based on a calculation tied to the date American General received Carter's proof of loss.[13] Around three weeks later, American General sent Dickson the remaining balance (half the face amount of the policy) plus the statutory interest it owed, which it based on the date it received Dickson's proof of loss.[14]

In January 2014, Dickson sued American General in Jefferson County, Texas, alleging that American General owed her interest on the policy "from the date that Mr. Damrel's death was entered into the Social Security Administration's Death Master File" rather than from the date it received her proof of loss. According to Dickson, by failing to pay the full benefits including the interest she was owed, American General engaged in fraud, acted maliciously, was grossly negligent, converted funds, breached the contract, violated the Texas Insurance Code, breached its duty of good faith and fair dealing, and was unjustifiably

---

[13]*See* Tex. Ins. Code Ann. § 1103.104 (Interest on Proceeds).
[14]*Id.*

enriched because it had retained and used her money "for about sixteen years." In October 2015, Dickson amended her petition and Carter joined the suit. The amended petition contains the same claims as Dickson's original petition but asserts an additional "equitable cause of action of money had and received[,]" a claim based on Dickson's theory that a named beneficiary or in the absence of a beneficiary the policyowner's heir's rights in the proceeds of a life insurance policy vest immediately upon the policyowner's death. In the amended petition, Dickson and Carter, as plaintiffs, sought an accounting, damages, and equitable relief. They also asked the trial court to certify their claims so they could go forward as a class.

The Plaintiffs' Sixth Amended Petition, which is Dickson's and Carter's live pleading, alleges just two claims—a claim for money had and received and a claim for unjust enrichment. In the Sixth Amended Petition, the plaintiffs asked the court to: (1) order an accounting; (2) impose a constructive trust on the money American General earned on the assets the plaintiffs alleged were rightfully owned by the class; (3) order American General to disgorge the "earnings and compound earnings on the life insurance proceeds [that rightfully belonged to the

9

members of the class that American General] comingled and invested"
with assets that it owned; and (4) allow the plaintiffs "all further legal
and or equitable relief that the Court may deem just and proper." The
plaintiffs also asked the trial court to certify a class of all Texas residents
to whom American General paid death benefits under life insurance
policies issued in Texas and owned by Texas residents during the *class
period*.[15]

In November 2018, Dickson filed a motion asking the trial court to
certify a class action based on the two equitable claims she alleged in her
Sixth Amended Petition. According to Dickson's motion, her money had
and received, and her unjust enrichment claims were appropriate for
class certification and maintainable as class claims because the issues
common to the class predominate over the issues affecting only
individuals in the putative class. Dickson argued that because the
ownership in the proceeds that are payable under life insurance policies
vests in the beneficiaries or in the absence of beneficiaries in the heirs of

---

[15]The petition defined *class period* as October 18, 2012, through the date of final judgment. The class allegations disclaimed any desire for the class to include any judges who were presiding over the case, the "staff of the presiding judges[,]" "the immediate family of the pres[id]ing judges[,]" and the employees of American General and its affiliates.

the policyowners on a policyowner's death, the right to the earnings on the proceeds from the date of policyowner's death forward belongs to the beneficiaries or heirs and not to American General, which had wrongfully treated the proceeds from policies on which claims had not been filed as its own until a policyowner's beneficiary or heir filed a claim.

As to predominance and superiority, Dickson's motion alleges

[the] questions of law and fact common to Dickson and putative class members predominate over any questions affecting only individual members of the [c]lass, and a [c]lass action as asserted herein is superior to other available to other methods to the fair and efficient adjudication of this controversy, in that . . . [a]ll evidence is materially the same for each [c]lass member. The law applicable to those facts likewise is the same.

In response to Dickson's motion to certify her claims as a class, American General argued that Dickson's "motion fails under the commonality and predominance analyses." Noting Dickson sought both equitable and monetary relief, American General observed that "Texas courts are uniform in their view that such claims are inherently inappropriate for class certification." In the trial court, American General explained that in a trial of equitable claims it would be entitled to inquire into each class member's knowledge and understanding surrounding the circumstances that caused any delays in submitting a claim after a

11

policyowner died to allow a factfinder to weigh whether that person, in equity and good conscience, was entitled to an equitable remedy or recovery given the particular circumstances surrounding that individuals' claim.

American General pointed to Dickson's claim "to understand the challenges facing" a trial involving a class consisting of equitable claims when the claims against the policies arise in a variety of circumstances, each with different reasons explaining why the beneficiaries or heirs delayed in filing a claim following a policyowner's death. American General concluded that given the fact that there would be various explanations, the factfinder would be required to consider the individual circumstances in deciding whether the delay in any given case should be attributed to the individual or to American General depending on the circumstances and the causes of the delay. Boiling it down, American General argued the focus of the trial will be on individual issues, not issues that are common to the class.[16]

---

[16]To be sure, American General's response included several more arguments, including: (1) the trial court lacked authority to certify a class; (2) Dickson could not establish that Texas law applied to all class members; (3) Dickson was not an appropriate class representative; (4) the class the trial court certified is too broad; and (5) Dickson failed to

In August 2020, the trial court held a hearing to consider the parties' arguments on whether Dickson's claims should be certified and allowed to proceed as a class.[17] No witnesses testified in the hearing. Over five months later, the trial court, by order, certified Dickson's money had and received, and her unjust enrichment claims so they could proceed as a class. The order from which American General appealed includes extensive findings of fact, conclusions of law, and a trial plan.[18] In the order, the trial court:

- defines the class;
- appoints Anna Dickson as the representative for the class;
- appoints four law firms as class counsel;
- includes the findings required by Rule 42, Texas Rules of Civil Procedure, findings that address numerosity, commonality, typicality, and adequacy; and
- finds that the questions of law predominate over the questions affecting only individual members of the class and finds that allowing the suit to proceed as "a class is superior to other

---

show that handling the case as a damages class would be a viable way to resolve the parties' claims.

[17]*See* Tex. R. Civ. P. 42(c)(a)(A) ("When a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action."); *Nat'l Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627 (Tex. App.—Beaumont 1989, writ dism'd w.o.j.) (observing that in determining whether to certify a class, trial courts may consider the pleadings and other material in the record, together with the evidence presented in the certification hearing).

[18]Tex. R. Civ. P. 42(c); *Henry Schein v. Stromboe*, 102 S.W.3d 675, 685 (Tex. 2002).

available methods for the fair and efficient adjudication of the controversy."

After the trial court signed the order, American General filed a timely notice of appeal.[19] After filing the appeal, American General filed a brief, in which it raises two issues. First, American General argues that by failing to join the Texas Commissioner of Insurance as a party to the suit, the trial court never acquired subject-matter jurisdiction over the claims of the class seeking to declare certain sections of the Insurance Code unconstitutional. Second, American General argues the trial court abused its discretion in allowing Dickson's suit to proceed as a class action because Dickson failed to meet her burden to show her claims were maintainable as a class under the various requirements in Rule 42, Texas Rules of Civil Procedure.

Analysis

First, we address American General's issue claiming the trial court never acquired subject-matter jurisdiction over the suit because Dickson and Carter failed to add the Texas Commissioner of Insurance to their suit. Even though American General filed a plea to the jurisdiction based

---

[19]*See* Tex. R. App. P. 28.1 (Accelerated Appeal).

on their claim that Dickson and Carter were required to add the Texas Commissioner of Insurance to the suit as a defendant because they were challenging the constitutionality of several provisions of the Texas Insurance Code, the record does not show the trial court has ever conducted a hearing or ruled on American General's plea. And even had the trial court ruled on the plea, we are not aware of any statute giving a private litigant in contrast to a governmental entity the right to file an interlocutory appeal from a ruling on a plea to the jurisdiction.[20] We conclude that we lack jurisdiction to consider the arguments American General raises in its first issue.[21]

We do, however, have jurisdiction to consider American General's second issue, which argues the trial court abused its discretion in granting Dickson's motion to certify Dickson's equitable claims as a class.[22] Since the Predominance Requirement "is intended to prevent class action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely

---

[20]*See, e.g.,* Tex. Civ. Prac. & Rem. Code Ann. § 51.014.
[21]*See* Tex. R. App. P. 42.3(a).
[22]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (authorizing appeals from interlocutory orders granting or denying a party's motion seeking permission to proceed to litigate the suit as a class action suit).

compromise a party's ability to present viable claims or defenses[,]" we will address American General's arguments claiming Dickson's evidence fails the Predominance Requirement before addressing American General's remaining arguments.[23]

According to American General, resolving equitable claims involving delays in filing claims and determining the responsibility for them will inevitably turn on discrete issues tied to the evidence admitted at trial focusing on the individual members of the class. American General suggests that evidence is relevant to explain as to each claim the reasons for any delays in filing a claim so the factfinder may decide whether in equity and good conscience the fault as to the delay lies on the beneficiary, the policyowner or the policyowner's assignee, an heir, or American General.[24] The reasons it matters at this early stage of the

---

[23]*Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 434 (Tex. 2000).

[24]American General suggests that the evidentiary issues will include the following: (1) establishing what each member knew in the period relevant to filing a proof of loss; (2) what each member relied on in deciding when to file a claim for benefits; (3) the explanation that American General offers to explain why there was delay in paying proceeds to someone American General ultimately determined filed a valid proof of death; (4) whether American General's relationship with any of the members of the class created a fiduciary relationship that justifies disgorgement, requiring an accounting, or imposing a constructive trust; and (5) whether delays in payment were justified by

16

litigation is that it is well-settled that in class action suits, courts are not permitted to adopt the approach of "certify now and worry later" in determining whether individual issues are likely to predominate over the common issue in a future trial.[25]

As is relevant here, Rule 42(b)(3) of the Texas Rules of Civil Procedure provides that a suit may proceed as a class action if other prerequisites of the rule are satisfied and "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[26] Even though our procedural rules recognize that class actions may sometimes reduce or eliminate the prospect of what might otherwise be repetitive litigation, the Texas Supreme Court has recognized that parties have "no right to litigate a claim as a class action."[27] Since the trial court named Dickson as the class representative, we will assume that her claims are typical to those of the individuals who

_____

the investigation needed to determine whether the person who filed a proof of death was the rightful beneficiary of the owner of the policy.

[25]*Id.*
[26]Tex. R. Civ. P. 42(b)(3).
[27]*Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452-53 (Tex. 2000).

comprise the class in evaluating American General's arguments that the trial court failed to perform a rigorous analysis is analyzing whether Dickson's claims are maintainable as a class based on the Predominance Requirement in Rule 42.[28]

In appeals from orders certifying a class, we evaluate the trial court's "actual, not presumed conformance with [Rule 42.]"[29] Accordingly, orders certifying proceedings as class actions are reviewed for abuse of discretion.[30] To resolve this appeal, the question we must decide is whether the trial court abused its discretion in finding that Dickson established her claims were maintainable under the Predominance Requirement in Rule 42.[31]

---

[28]Tex. R. Civ. P. 42(b)(3); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (explaining the "class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (internal quotations omitted).

[29]*Stromboe*, 102 S.W.3d at 691 (cleaned up).

[30]*Reimer v. State*, 392 S.W.3d 635, 639 (Tex. 2013); *Stromboe*, 102 S.W.3d at 691.

[31]*Stromboe*, 102 S.W.3d at 694 ("The question [a trial] court must decide before certifying a class, after rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs have demonstrated that they can meet their burden of proof in such a way that common issues predominate over individual ones.").

In performing a rigorous analysis of Rule 42's certification requirements, the "predominance requirement . . . is one of the most stringent prerequisites to class certification."[32] "The predominance requirement prevents certification when complex and diverse individual issues would overwhelm or confuse a jury or severely compromise a party's ability to preset other viable claims or defenses."[33] Unless the trial court is able to determine that the individual issues involved in the case are able to be presented and "considered in a manageable, time-efficient and fair manner, the trial court should not certify the litigation to proceed as a class action."[34]

The class the trial court certified sued American General on two claims—a claim for money had and received and a claim for unjust enrichment. These are basically quasi-contract theories, theories that do not rely on contracts "at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended."[35] The general rule is that when parties have an express contract covering the

---

[32]*Bernal,* 22 S.W.3d at 433.
[33]*Pitts,* 236 S.W.3d at 205.
[34]*Id.*
[35]*Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000) (cleaned up); *see Barrera,* 248 S.W.3d at 162.

matter in dispute, the parties to the contract may not recover on an implied contract claim.[36] Even so, that rule is subject to equitable exceptions under some circumstances in situations involving restoring a party's property or preventing a party from enriching itself at the expense of another when the evidence before the factfinder supports the application of the exception in the trial.[37]

The life insurance policies American General sold to those who bought its policies over the years—its policyholders—contain terms describing what American General owes a beneficiary of a policy upon the policyholder's death. Yet the class the trial court certified is seeking equitable and not legal relief, so the class is seeking relief outside the language of the policy. Still, the issue we must decide is whether the trial court abused its discretion in certifying the claims as a class, not whether the claims the trial court chose to certify are (or are not) viable. Thus, we

---

[36] *See Fortune Prod. Co.*, 52 S.W.3d at 684.

[37] *See Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469-70 (Tex. 1998) (recognizing "that in some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment").

assume without deciding that Dickson's equitable claims are viable based on the facts she alleged in her pleadings.[38]

Even then, in a trial involving the claims of the class, the class will be required to prove that American General is holding money American General allegedly earned on funds that in equity and good conscience belong to the class under the plaintiffs' theory that the ownership of the proceeds in the polices vested upon each respective policyowners' death.[39] And in proving unjust enrichment, the class must prove that American General wrongfully benefitted by withholding the earnings from the class through fraud, duress, or by undue advantage.[40] For its part, American General points to the Texas Insurance Code to rebut that claim, noting that interest on the proceeds of life insurance policy does not begin to accrue until the insurance company receives the proof of loss.[41] Thus, the question appears to be whether equity and good conscience allowed

---

[38]*See  Barrera*, 248 S.W.3d at 161 n.1 ("In this case, the trial court certified a "money-had-and-received" class, and we will presume without deciding the availability of such a class in the context presented.").

[39]*See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015).

[40]*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

[41]Tex. Ins. Code Ann. § 1103.104.

American General to retain the earnings for its own account before beneficiaries of policyowners who purchased American General policies filed proofs of loss, a question that in many cases could turn on individualized circumstances surrounding the reasons the individuals who had the right to pursue claims under life insurance policies issued by American General did not promptly file a claim after a policyowner's death.

Assuming Dickson's claim is typical of those of the members of the class, the questions that surround why there were delays that left Damrel's policy unclaimed, what explains the delays, and whether the delays are in equity and good conscience attributable to American General, Damrel's assignees, or Dickson's heirs, will require individualized proof so the factfinder can decide whether in equity and good conscience Dickson is entitled to any relief on the facts she's alleged. The history that gave rise to the claim involved in Dickson's case shows why equitable claims are unlikely candidates for class certification given the Predominance Requirement and rigorous analysis courts are required to perform before certifying class action proceedings under Rule

42.[42] Simply put, American General has the right to present any facts and defenses that might allow a factfinder to conclude that a policyowner's beneficiary or heir in equity and good conscience is not entitled to the money American General earned during a period that the beneficiary or heir delayed in filing their proofs of loss.[43]

And facts surrounding why individual members of the class delayed filing claims for benefits under the policies are not the only issues that will require the factfinder to hear evidence tailored to individual claims given the other defenses that American General pled. As to Carter and Dickson, American General alleged that laches barred their claims, and it also pleaded that Dickson and Carter have unclean hands. Laches is an equitable remedy that, on proper findings, prevents a party from prevailing on a claim because of a lapse of time resulting in a claim becoming stale.[44] To prevail on a defense of laches, American General must show (among other things) that an individual like Dickson unreasonably delayed asserting her rights.[45] To present its laches

---

[42] *Pitts*, 236 S.W.3d at 206.
[43] *See Barrera,* 248 S.W.3d at 162.
[44] *Vickery v. Vickery*, 999 S.W.2d 342, 355 (Tex. 1999) (op. on reh'g).
[45] *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998).

defense, American General would likely try to present evidence to show that a beneficiary of a policyowner failed to conduct a reasonable search after a policyowner's death and was at fault for failing to discover they were named or that a life insurance policy existed that the policyowner purchased before they died.

In its brief, American General argues class certification is inappropriate because the class claims (and its equitable defenses to them) will require individualized inquiries into each class member's knowledge, conduct, and experience in defending Dickson's claim. When American General was in the trial court, they made these same arguments. For example, in arguing that Dickson and Carter had unclean hands, American General presented evidence in the trial court showing that Dickson and her sister represented they inherited their mother's estate without disclosing in their affidavits that their mother gave twenty percent of her estate to their cousin in her will.[46] According

---

[46]From the information in the trial court's record, it appears to us that Dickson's and Carter's attorney did provide Concetta Damrel's will to American General. The will includes a provision giving Dickon's and Carter's cousin twenty percent of their mother's estate. So while their affidavits do state they inherited their mother's estate, they did not say they inherited her entire estate, and the information is one of the many documents their attorney sent American General. As we understand its

to American General, if the evidence in the trial shows that Dickson and Carter disinherited their cousin by failing to give him his share of the policy proceeds from the policy, a factfinder could decide that Dickson and Carter have unclean hands and find they are not entitled to an equitable remedy on their claims. In the end, American General suggests the "actual outcome of the analysis on each equitable defense is irrelevant" given the fact that a trial would require the factfinder to conduct an individualized analysis in each case, which makes the trial court's decision to certify the claims improper.

Given the complexities of a trial involving equitable claims like Dickson's and assuming her claims are typical of the members of the class, we conclude the individual differences "between each class member's experience . . . could determine in whose favor the equities weigh in resolving their claims."[47] Because Dickson failed to prove at the outset that individual issues governing her equitable claims alleging

---

argument, American General suggests it would be entitled to argue in the trial of equitable defenses and claims to prove that an individual submitted a materially misleading affidavit by omitting material information from the affidavit even if the individual also provided the missing information somewhere in other documents submitted to the insurance company in connection with a claim.

[47]*Pitts,* 236 S.W.3d at 206.

money had and received and unjust enrichment are maintainable in a fair, manageable, and time-efficient manner on a class-wide basis, we conclude she failed to meet the Predominance Requirement of Rule 42(b)(3).[48]

## Conclusion

We hold Dickson failed to establish the class was maintainable based on the predominance requirement in Rule 42(b)(3).[49] We reverse the trial court's order and remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on October 7, 2021
Opinion Delivered July 14, 2022

Before Golemon, C.J., Kreger and Horton, JJ.

---

[48]Tex. R. Civ. P. 42(b)(3); *Barrera,* 248 S.W.3d at 163.
[49]*Id.*