RIDGEWAY V. BNSF

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-253-CV

RAY RIDGEWAY, RICHARD FOLEY      APPELLANTS

AND RICHARD STARKEY AND APPELLEES

V.

BURLINGTON NORTHERN SANTA APPELLEES

FE CORP. AND THE BURLINGTON       AND APPELLANTS

NORTHERN AND SANTA FE RAILWAY 

COMPANY 

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Ray Ridgeway, Richard Foley, and Richard Starkey (collectively, appellants) appeal from the trial court’s order denying class action status to their case against Burlington Northern Santa Fe Corp. and The Burlington Northern and Santa Fe Railway Company (collectively, BNSF).  In five issues, appellants contend that the trial court abused its discretion by denying their request for class treatment.  BNSF has also filed a conditional cross-appeal, in the event we sustain appellants’ issues.  Because we conclude that the trial court did not abuse its discretion by denying appellants’ request for class certification, we affirm the trial court’s order without reaching BNSF’s cross-appeal.

II.  Background Facts and Procedural History

In 1988, to fight off a hostile takeover, BNSF distributed $4.7 billion to its shareholders as a special distribution on more than 250 million shares of stock.  Before making the special distribution, BNSF conducted a study to determine the “mix” of the distribution for tax purposes.  To the extent the distribution was paid out of BNSF’s earnings and profits (E&P), it was required to be characterized as a dividend and was taxable as ordinary income to the shareholders.  Any part of the distribution that exceeded the E&P was considered a return of capital and was not taxable, to the degree that it did not exceed the shareholders’ purchase price for their respective shares.  Instead, the return of capital portion of the distribution was to be credited against the shares’ basis, which would then reduce the investment deducted from the sales price of the shares for tax purposes in the event the shares were sold. In October 2000, appellants filed the underlying suit against BNSF on their own behalf, and on the behalf of a world-wide class of more than 200,000 shareholders, asserting causes of action for negligence per se, common law negligence, breach of contract, and breach of fiduciary duty, and seeking to recover damages allegedly resulting from an error in BNSF’s special distribution mix study.  Appellants allege that the study grossly overstated the amount of the special distribution characterized as a taxable dividend and grossly understated the amount of the distribution characterized as a nontaxable return of capital.  Appellants allege that this error had a direct impact on their 1988 income tax payments, causing the class as a whole to pay federal income taxes on approximately $2.7 billion of the distribution amount that was mischaracterized as a dividend.  Appellants further allege that the mischaracterization “adversely impacted the ability of the class members to make rational financial decisions,” including decisions regarding tax planning, estate planning, and evaluations of the corporate actions BNSF has taken in the years following the 1988 special distribution. 

After numerous hearings spanning more than two years, the trial court entered an order denying appellants’ request for class certification.  In its order, the trial court made the following findings and conclusions, among others:

•The substantive issues, including the elements of the causes of action, the defenses asserted by the parties, and the burdens of proof on those elements, are governed by Delaware law;

•The procedural issues, including class certification requirements, are governed by Texas law;

•The essential elements of Texas Rule of Civil Procedure 42 have not been satisfied because the actual damages issues are not manageable and appellants cannot maintain a class action under rule 42(b)(3). 

This interlocutory appeal followed. 

III.  Standard of Review

Trial courts enjoy a wide range of discretion in deciding whether to maintain a lawsuit as a class action.
(footnote: 1)  Our review of the trial court’s decision on appeal is strictly limited to determining whether there has been an abuse of discretion in denying certification.
(footnote: 2)  A trial court abuses its discretion when it  (1) acts arbitrarily or unreasonably, without reference to any guiding rules or principles;
(footnote: 3)  (2) does not properly apply the law to the undisputed facts;
(footnote: 4)  or (3) rules on factual assertions not supported by the record.
(footnote: 5)  A trial court does not abuse its discretion when it bases its decision on conflicting evidence.
(footnote: 6)
 In determining whether the trial court abused its discretion in denying certification, we do not view the evidence in the light most favorable to the trial court’s decision, nor do we entertain every presumption in favor of the court’s decision.
(footnote: 7)  Instead, we determine whether the trial court, before ruling on a class certification, performed a “rigorous analysis” of whether all prerequisites to certification had been met.
(footnote: 8)
 Texas law does not require a trial court to certify a class action upon a determination that the facts sufficiently satisfy Texas Rule of Civil Procedure 42.
(footnote: 9)  Thus, an appellant seeking to reverse an order denying class certification faces a formidable task.  Appellants must demonstrate not only that they satisfied all the rule 42 requirements for certification, but also that the trial court’s refusal to certify the class was legally unreasonable under the facts and circumstances of the case.
(footnote: 10)  So long as the trial court acted rationally in the exercise of its discretion, we will uphold its ruling denying certification.
(footnote: 11)
IV.  The Predominance Requirement of Rule 42(b)(3)

Class actions must satisfy at least one of the subdivisions of rule 42(b),
(footnote: 12) which are as follows:

An action may be maintained as a class action if the prerequisites of [rule 42(a)] are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
(footnote: 13)

Appellants assert that “the application of settled legal principles to the facts of this case leads to the conclusion that the litigation is suitable for class treatment.”  Specifically, they assert that this class action satisfies subdivision 42(b)(3).  The trial court found, however, that the predominance requirement of rule 42(b)(3) had not been satisfied because the actual damages issues are not manageable.  The trial court stated,

[T]he determination of actual damages, if any, is an issue affecting individual class members on a class-member-by-class-member basis.  The issue of whether and to what extent each class member has suffered actual damages will be the object of most of the efforts of the litigants and the Court.  Due to the many individual  issues concerning payment of income taxes by each class member, as applied to the number of class members in Plaintiffs’ proposed class, this case cannot be tried in a manageable, time-efficient, yet fair manner. 

Rule 42(b)(3)’s predominance requirement is one of the most stringent prerequisites to class certification.
(footnote: 14)  To aid courts in determining if rule 42(b)(3) certification is appropriate, the rule establishes a list of nonexhaustive factors to consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  and (D) the difficulties likely to be encountered in the management of a class action.
(footnote: 15)
 The test for predominance is not whether common issues outnumber uncommon issues, but “whether common or individual issues will be the object of most of the efforts of the litigants and the court.”
(footnote: 16)  If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate.
(footnote: 17)  Thus, if it is not determinable from the outset that individual issues can be considered in a manageable, time-efficient, yet fair manner, certification of the class is not appropriate.
(footnote: 18)
V.  Nominal Damages Class

In their first issue, appellants contend that the predominance requirement could be satisfied by certifying a nominal damages class for purposes of appellants’ breach of contract and breach of fiduciary duty claims.

Nominal damages are available under Delaware law for breach of contract and breach of fiduciary duty.
(footnote: 19)  Nominal damages generally are not recoverable under Delaware law for negligence, however, because damages are an element of the cause of action itself, which must be proven for the plaintiff to recover.
(footnote: 20)
 In this case, two of appellants’ four causes of action against BNSF are negligence per se and common-law negligence claims.  To prevail on these negligence claims, each shareholder class member would be required to prove that the shareholder suffered actual damages as a result of BNSF’s alleged mischaracterization of the special distribution.
(footnote: 21)  In proving actual damages, common questions of fact would not predominate over questions affecting only individual members;
(footnote: 22) to the contrary, individual questions of fact regarding each individual shareholder’s damages would predominate, and “individual issues [would] be the object of most of the efforts of the litigants and the court.”
(footnote: 23)   Therefore, merely certifying a nominal damages class on the class members’ breach of contract and breach of fiduciary duty claims would not adequately resolve the difficulties likely to be encountered in the management of the damages issues in this case.
(footnote: 24)
 Accordingly, we hold that the trial court did not abuse its discretion by refusing to certify a nominal damages class under the facts and circumstances of this case.
(footnote: 25)  We overrule appellants’ first issue.

VI.  Liability-Only Class

In their second issue, appellants contend that, because the trial court agreed that the liability issues of their claims against BNSF—duty, breach, and causation—were suitable for class certification, the trial court abused its discretion by failing to apply procedural rule 42(d)(1) and certify a liability-only class.  We disagree.  Rule 42(d)(1) provides that, “[w]hen appropriate . . . an action 
may
 be brought or maintained as a class action with respect to particular issues.”
(footnote: 26)  While the permissive language of this rule authorizes a trial court to certify the subparts of a cause of action for class treatment “when appropriate,” it does not mandate that it do so.
(footnote: 27)  Appellants cite no legal authority that holds otherwise.

Moreover, certifying a liability-only class would not resolve the unmanageable damages issues and, therefore, would not satisfy the predominance requirement of rule 42(b)(3).  Ideally, “a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim[s].”
(footnote: 28)  In this case, a judgment in favor of the class members on the liability issues would not settle the entire controversy.  Instead, after the liability issues were resolved, the individual damages issues would still have to be tried, which, as we have discussed, would be an overwhelming and unmanageable task for a single jury, or even a single court.  If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate for purposes of rule 42(b)(3),
(footnote: 29) and class certification is not appropriate.
(footnote: 30)
 Accordingly, we hold that the trial court did not abuse its discretion by refusing to certify a liability-only class.  We overrule appellants’ second issue.

VII.  Aggregated Damages Model

In their third and fifth issues, appellants assert that the trial court abused its discretion by refusing to employ an aggregated damages model to determine class-wide damages.  In support of their argument, appellants cite Delaware cases which hold that damages that are difficult to quantify need only be proven with reasonable—rather than actual—certainty.
(footnote: 31)  Appellants assert that an aggregated damages model utilizing statistical evidence may be used to establish the reasonable probability of such damages,
(footnote: 32) and they contend that they demonstrated how the total, or aggregate, amount of taxes overpaid by the class as a whole could be calculated through the application of mathematical modeling and statistical analysis. 

Assuming, without deciding, that the aggregated damages model proposed by appellants is appropriate for use in a class action,
(footnote: 33) appellants have not demonstrated that the individual class members’ damages in this case would be difficult to ascertain.  Appellants have, in fact, conceded that some class members’ damages are “clearly provable and calculable.”  Therefore, it was not an abuse of discretion for the trial court to refuse to employ appellants’ proposed aggregated damages model to determine class-wide damages under the facts of this case.

More importantly, the use of statistical evidence to establish causation and damages in a case such as this would improperly shift the burden of proof to BNSF and deprive BNSF of its right to a jury trial on these issues.
(footnote: 34)  Delaware law requires a plaintiff to prove both causation and damages in order to recover from the defendant.
(footnote: 35)  The resolution of these issues will vary from class member to class member based on highly individualized factors.
(footnote: 36)
 For example, in this case, over 250 million shares of BNSF stock were held in 1988 by over 200,000 proposed class members.  To calculate an aggregated amount of class-wide damages on the alleged overpayment of ordinary income taxes in 1988, appellants proposed using average tax rates derived from statistical samples of taxpayers or, alternatively, a default fifteen percent flat rate, multiplied by the average tax basis of the shares held by the class members at the time of the special distribution.  The record shows, however, that whether BNSF’s alleged misreporting of the special distribution caused each of the 200,000-plus class members to suffer an injury is based on several individualized factors, such as whether the shares were held by individuals rather than domestic corporations, whether the shares were sold in 1988, and the basis in the shares.  Appellants’ expert testified that approximately fourteen percent of the shares held by individual shareholders were either sold in 1988, or had a basis under $10.32, and that those shares suffered no injury as a result of the alleged misreporting.  In addition, BNSF’s expert testified that domestic corporations could have benefitted from an alleged reporting error because corporations are taxed at a lower rate for dividends than for capital gains.  Likewise, the evidence shows that the amount of taxes overpaid in 1988 by each injured class member will vary based on numerous highly individualized factors, including (1) basic tax status, i.e., foreign or domestic corporation, partnership, trust, estate, or individual, married, or single, etc.; (2) amount of ordinary income for 1988 and associated marginal ordinary-income tax rate; (3) deductions, credits, and exemptions for 1988; (4) number of shares of stock held in 1988; (5) tax basis for each share; and (6) complete purchase and sale information for the stock. 

In light of these highly individualized factors, utilization of an aggregated damages model would require BNSF to prove that some class members were not damaged at all by the alleged misreporting and that other class members’ damages were less than those calculated by the model, thus shifting the burden of proof to BNSF.  Because class action devices may not be used to alter a party’s burden of proof,
(footnote: 37) the trial court did not abuse its discretion in refusing to allow appellants to use their aggregated damages model to satisfy the predominance requirement.
(footnote: 38)
 For all of these reasons, we hold that the trial court did not abuse its discretion by rejecting appellants’ proposal to employ an aggregated damages model to determine class-wide damages.  Accordingly, we overrule appellants’ third and fifth issues.
(footnote: 39)
VIII.  Conclusion

Having disposed of all of appellants’ issues, we affirm the trial court’s order denying class certification.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  August 24, 2006

FOOTNOTES
1:
Fuller v. State Farm County Mut. Ins. Co.,
 156 S.W.3d 658, 660 (Tex. App.—Fort Worth 2005, no pet.).

2:
Id.

3:
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

4:
State v. Sw. Bell Tel. Co.,
 526 S.W.2d 526, 528 (Tex. 1975).

5:
Fuller,
 156 S.W.3d at 660.

6:
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978).

7:
Henry Schein, Inc. v. Stromboe,
 102 S.W.3d 675, 690 (Tex. 2002).

8:
Nat’l W. Life Ins. Co. v. Rowe,
 164 S.W.3d 389, 392 (Tex. 2005); 
see
 
Sw. Refining Co. v. Bernal,
 22 S.W.3d 425, 435 (Tex. 2000) (“[A]ctual, not presumed, conformance with [rule 42] remains . . . indispensable.”) (quoting 
Gen. Tel. Co. of the Sw. v. Falcon,
 457 U.S. 147, 160, 102 S. Ct. 2364,  2372 (1982)).

9:
Vinson v. Tex. Commerce Bank-Houston, Nat’l Ass’n,
 880 S.W.2d 820, 825 (Tex. App.—Dallas 1994, no writ).

10:
Doran v. ClubCorp USA, Inc.,
 174 S.W.3d 883, 888 (Tex. App.—Dallas 2005, no pet.); 
Fuller,
 156 S.W.3d at 660.

11:
Vinson,
 880 S.W.2d at 824.

12:
Bernal,
 22 S.W.3d at 433; 
Becton Dickinson & Co. v. Usrey,
 57 S.W.3d 488, 493 (Tex. App.—Fort Worth 2001, no pet.).  Before the October 9, 2003 amendment to rule 42, rule 42(b) contained four subdivisions rather than the current three.  Former subparagraph (b)(3) of rule 42 was omitted as unnecessary, and former subparagraph (b)(4) was renumbered as subparagraph (b)(3).  
Tex. R. Civ. P.
 42.2(b)(3)-(4), 66 
Tex. Bar J.
 902 (1983, amended 2003).

13:
Tex. R. Civ. P.
 42(b).

14:
Bernal,
 22 S.W.3d at 433.

15:
Tex. R. Civ. P.
 42(b)(3).

16:
Bernal,
 22 S.W.3d at 434; 
accord Snyder Commc’ns, L.P. v. Magana,
 142 S.W.3d 295, 300 (Tex. 2004) (holding that a court cannot certify a class under rule 42 if the focus of the litigation will be mainly on individual issues, despite the existence of some common questions of law or fact).

17:
Bernal,
 22 S.W.3d at 434.

18:
Id.
 at 436 (citing 
Gen. Motors Corp. v. Bloyed,
 916 S.W.2d 949, 959 (Tex. 1996)).

19:
In re Tri-Star Pictures, Inc., Litigation,
 634 A.2d 319, 334 & n.18 (Del. 1993) (breach of fiduciary duty), 
disapproved on other grounds, Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
 845 A.2d 1031 (Del. 2004); 
USH Ventures v. Global Telesys. Group, Inc.
, 796 A.2d 7, 23 (Del. Super. Ct. 2000) (breach of contract), 
aff’d
, 781 A.2d 696 (Del. 2001).  No party has complained about the trial court’s ruling that Delaware law applies to the substantive issues in the case; therefore, we assume for purposes of this opinion that it does.

20:
22 Am. Jur.
 2d 
Damages
 §§ 16, 18; 
see New Haverford P’ship v. Stroot,
 772 A.2d 792, 798 (Del. 2001); 
Russell v. K-Mart Corp.,
 761 A.2d 1, 5 (Del. 2000); 
Duphily v. De. Elec. Co-op., Inc.,
 662 A.2d 821, 828 (Del. 1995) (stating that, under Delaware law, damages are elements of both negligence and negligence per se).

21:
Russell,
 761 A.2d at 5; 
Duphily,
 662 A.2d at 828.

22:
Tex. R. Civ. P.
 42(b)(3).

23:
Bernal,
 22 S.W.3d at 434; 
accord Snyder Commc’ns,
 142 S.W.3d at 300.  Indeed, BNSF demonstrated to the trial court that, if there were 104,000 class members, four individual damages trials per day would take ninety-six years to complete, and eight trials per day would take forty-eight years.  The evidence shows that there are approximately 200,000 shareholders in appellants’ proposed class. 

24:
Tex. R. Civ. P.
 42(b)(3)(D).  We note that, even if certifying a nominal damages class for the purpose of trying appellants’ breach of contract and breach of fiduciary claims were to make the case manageable, appellants have not shown whether their willingness to forego actual damages on these claims in exchange for nominal damages is typical of the other 200,000 class members.  “[I]t is not clear that a class action is superior [to other fair and efficient methods for adjudicating the controversy], another predominance requirement . . . , if it necessitates that plaintiffs give up substantial rights.”  
Henry Schein, Inc.,
 102 S.W.3d at 695.

25:
Doran,
 174 S.W.3d at 888; 
Fuller,
 156 S.W.3d at 660.

26:
Tex. R. Civ. P.
 42(d)(1) (emphasis supplied).

27:
See
 
Tex. Gov’t Code Ann.
 § 311.016(1) (Vernon 2005) (“‘May’” creates discretionary authority or grants permission or a power.”); 
Dallas County Cm. Coll. Dist. v. Bolton,
 185 S.W.3d 868, 873 (Tex. 2005) (noting same).

28:
Bernal,
 22 S.W.3d at 434-35 (rejecting the “certify now and worry later” approach); 
see Vinson,
 880 S.W.2d at 825-26 (holding that the trial court did not abuse its discretion by refusing to certify the class because, even if the appellants prevailed on any one of the common issues of law, “the members of the class must do more than prove the amount of their individual claims”).

29:
Bernal,
 22 S.W.3d at 434; 
see Snyder Commc’ns,
 142 S.W.3d at 300-01.

30:
Compaq Computer Corp. v. Lapray,
 135 S.W.3d 657, 671 (Tex. 2004).

31:
See, e.g., Moody v. Nationwide Mut. Ins. Co.,
 549 A.2d 291, 293 (Del. 1988) (loss of future earnings); 
Henne v. Balick,
 146 A.2d 394, 396 (Del. 1958) (same); 
Cura Fin. Servs N.V. v. Electronic Pmt. Exch., Inc.,
 No. CIV. A. 18278, 2001 WL 1334188, at *19-20 (Del. Ch. Oct. 22, 2001) (future lost profits); 
Red Sail Easter Ltd. Ptrs., L.P. v. Radio City Music Hall Prods.,
 No. CIV. A. 12036, 1992 WL 251380, at *7 (Del. Ch. Sept. 29, 1992) (same); 
Tanner v. Exxon Corp.,
 No. C.A. 79C-JA-5, 1981 WL 191389, at *2-4 (Del. Super. Ct. July 23, 1981) (same); 
see also Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.,
 273 U.S. 359, 378-79, 47 S. Ct. 400, 405 (1927); 
R.M. Williams Co. v. Frabizzio,
 No.  C.A. 90C-MY-10, 1993 WL 54423, at *13 (Del. Super. Ct. Feb. 8, 1993) (both stating that doubts about the extent of damages are resolved against the wrongdoer, particularly if the defendant’s actions make the precise calculation of damages impossible).

32:
Cf. United States v. Fior D’Italia, Inc.,
 536 U.S. 238, 243, 122 S. Ct. 2117, 2122-23 (2002) (holding that the internal revenue code authorized the IRS to use aggregate estimates of unreported employee tips in calculating the tax assessment against such tips on the employer’s income).

33:
This court did not, as appellants contend, “implicitly approve[] the use of statistics in the class-action context” in 
Samuelson v. United Healthcare of Texas, Inc.
  Rather, we merely noted the testimony of appellees’ expert witness that damages could 
not
 be calculated on an aggregate, class-wide basis.  79 S.W.3d 706, 712 (Tex. App.—Fort Worth 2002, no pet.).

34:
See Bernal,
 22 S.W.3d at 437 (holding that the class action is a procedural device that is “not meant to alter the parties’ burdens of proof, right to a jury trial, or the substantive prerequisites to recovery” and therefore is not a proper vehicle for trying claims whose outcome depends on highly individualistic variables).

35:
Bomarko, Inc. v. Int’l Telecharge, Inc.,
 794 A.2d 1161, 1184 (Del. Ch. 1999) (stating that “a wrong [must be] proven and injury established”), 
aff’d,
 766 A.2d 437 (Del. 2000); 
Total Care Physicians, P.A. v. O’Hara,
 No. C.A. 99C-11-201JRS, 2003 WL 21733023, at *3 (Del. Super. Ct. July 10, 2003) (“The court must first determine whether the plaintiff has proven that an injury or damage occurred and then must determine whether the plaintiff has adequately proven the amount of his damages.”), 
appeal ref’d,
 846 A.2d 239 (Del. 2003); 
see Russell,
 761 A.2d at 5; 
Duphily,
 662 A.2d at 828  (both holding that, in order to prevail in a negligence action in Delaware, the plaintiff must prove both causation and injury).  Although nominal damages may be presumed in some breach of contract and intentional tort cases if the fact of injury is established, as we have discussed in section V, there is no presumption of damages in negligence cases.

36:
See Capital One Bank v. Rollins,
 106 S.W.3d 286, 297 & n.6 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that class representatives had not demonstrated that statistical evidence based on the defendant’s computer records and other factors could overcome the need for individualized proof regarding whether the defendant had failed to properly credit individual class members’ credit card payments); 
Wal-Mart Stores, Inc. v. Lopez,
 93 S.W.3d 548, 560-61 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding, in a suit for wrongful denial of breaks and pay for off-the-clock work, that statistical evidence could not be used to prove that many breaks were missed by individual class members, to provide an estimate of the total amount of missed break time, and to determine the average number of off-the-clock hours per week for each class member); 
accord In re Fibreboard Corp.,
 893 F.2d 706, 709, 711 (5th Cir. 1990) (holding that, because Texas substantive law requires individual plaintiffs to prove both causation and damages, liability and damages issues in asbestos litigation involving over 3000 class members could not be determined based on representative trials for only 11 sample plaintiffs, coupled with expert testimony based on math models to extrapolate the class members’ total damages).

37:
Bernal,
 23 S.W.3d at 437.

38:
Appellants’ reliance on 
Dallas County Community College Dist. v. Bolton
 is misplaced.  
Bolton
 does not discuss the propriety of using aggregated damages models to satisfy the predominance requirement in class certification cases.  89 S.W.3d 707, 722 (Tex. App.—Dallas 2002), 
rev’d,
 185 S.W.3d 868, 870 (Tex. 2005). 

39:
In light of our disposition of appellants’ first, second, third, and fifth issues, we need not consider appellants’ fourth issue, in which they complain that the trial court improperly determined that damages had to be offset by future tax benefits, nor is it necessary for us to reach BNSF’s cross-appeal.  
See
 
Tex. R. App. P.
 47.1 (providing that court of appeals need address only issues raised that are necessary to the final disposition of the appeal).