**Affirmed and Opinion Filed February 4, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-19-00284-CV

---

## TOYOTA MOTOR SALES, U.S.A., INC. AND TOYOTA MOTOR CORPORATION, Appellants
### V.
## BENJAMIN THOMAS REAVIS AND KRISTI CAROL REAVIS, INDIVIDUALLY AND AS NEXT FRIENDS OF E.R. AND O.R., MINOR CHILDREN, Appellees

---

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15296**

---

## MEMORANDUM OPINION
Before Justices Myers, Partida-Kipness, and Reichek
Opinion by Justice Partida-Kipness

Appellants Toyota Motor Sales, USA, Inc. (TMS) and Toyota Motor

Corporation (TMC) (collectively, Toyota or the Toyota Appellants) appeal the trial

court's denial of their motion for temporary and permanent sealing order of four trial

exhibits and related testimony. After reviewing the briefs and the record, we

conclude Toyota has not shown the trial court abused its discretion. Accordingly, we

affirm the trial court's order.

## BACKGROUND

In September 2016, appellees Kristi and Ben Reavis were driving home from church in their 2002 ES 300 Lexus sedan when they were forced to stop for slow-moving freeway traffic and were rear-ended by an SUV travelling between 45 mph and 48 mph. The front seats collapsed, sending Ben and Kristi over their seats, into the back seat, and head first into their two young children, who were strapped into car seats in the back seat. The two Reavis children, who were three and five years old at the time of the collision, sustained severe, permanent traumatic brain injuries.

The Reavises sued TMS, TMC, and Toyota Motor North America, Inc. for product defects, negligence, and gross negligence, and sued the driver of the SUV, Michael Steven Mummaw, and the vehicle's owner, Mark Howell, for negligence and gross negligence. After non-suiting their claims against Howell and dismissing Toyota Motor North America, Inc., the case proceeded to trial against TMS, TMC, and Mummaw. The Reavises reached a settlement with Mummaw while the jury was deliberating.

At trial, the Reavises' experts testified that when the vehicle was rear-ended, the front seats yielded or bent backwards as designed by Toyota, Ben and Kristi slipped out of their seatbelts and ramped up (moved up) over the top of their front seatbacks, and then made violent, head-to-head contact with their children in the back seat before sliding back down into their front seats. According to these experts,

although the events happened in milliseconds, the children's severe, permanent traumatic brain injuries were caused by the head-to-head contact with their parents.

The Reavises presented evidence that Toyota designed its whiplash-injury lessening ("WIL") seats to yield or bend backwards in a rear-end collision as the Reavises' seats did here. Gary Whitman, a mechanical engineer and expert in occupant crash protection, automobile seats, and seatbelt-restraint systems, testified for the Reavises. It was his opinion that based on his testing and using Toyota's yielding seat, when the front seat yields backwards in 45mph+ rear-end collisions, Toyota's seatbelts fail to prevent front seat occupants from ramping-up their seatbacks and entering the rear-seat space. Whitman proposed an alternative seatbelt design that, in his opinion, would keep the front-seat occupant in his/her seat when Toyota's seatback yields backwards in 45mph+ rear-end collisions. The Reavises also presented evidence from which they maintain the jury could have reasonably concluded that Toyota had known of this "ramping" risk for decades but chose not to test for the risk or apply design standards to correct the problems and create a safe design to reduce or eliminate the risk.

After a two-week trial, the jury unanimously found TMC liable for design defect and marketing defect, found TMS liable as the nonmanufacturing seller of a defective product, determined actual damages for Kristi, Ben, and the Reavis children, assigned 90% responsibility to TMC, 5% to TMS, and 5% to Mummaw, found TMC and TMS liable for gross negligence, and determined exemplary damage

awards. The trial court rendered judgment in accordance with the verdict; awarding $98,676,248.71 in actual damages (after settlement credits) and $95,222,497.42 in exemplary damages against TMC; awarding $4,961,812.44 in actual damages and $14,400,000 in exemplary damages against TMS; and awarding pre-judgment and post-judgment interest.

## The Motion to Seal

After trial, Toyota sought temporary and permanent sealing of four trial exhibits and testimony related to one of those exhibits.[1] We separate these court records into two categories—the Engineering Rule exhibits and the WIL Guideline exhibit and related testimony.

The first category consists of Plaintiffs' Exhibits 243, 244, and 245. Those exhibits are three versions of the Toyota Engineering Rule TRD1290G (collectively, the Engineering Rule exhibits). That rule covers the procedure for design review based on failure mode, or DRBFM, which, Motoki Shibata, a Project General Manager for TMS, described as the process "created and used by TMC to properly review the design of a vehicle, component part, or function . . . ." According to Gary Stephens, one of Toyota's expert witnesses, the purpose of a design failure mode

---

[1] Regarding the materials sought to be permanently sealed, we make "every effort to preserve the confidentiality of the information the parties have designated as confidential" consistent with our obligation to hand down a public opinion explaining our decisions based on the record. *See MasterGuard L.P. v. Eco Techs. Int'l, LLC*, 441 S.W.3d 367, 371 (Tex. App.—Dallas 2013, no pet.); *see also Kartsotis v. Bloch*, 503 S.W.3d 506, 510 (Tex. App.—Dallas 2016, pet. denied) (citing TEX. R. APP. P. 47.1, 47.3 and TEX. GOV'T CODE § 552.022(a)(12) for proposition that opinions are public information).

and effects analysis is to test a design for problems in order to improve the design or to design an alternative for addressing issues that arise during the analysis. Stephens agreed design failure mode and effects analysis is a general engineering concept that is not specific to the automotive industry, and explained that it is used "to understand how . . . any design out there will perform under certain circumstances to identify aspects of the design that can be either improved or . . . designed into alternative means of addressing whatever issues may arise as a result of that analysis."

The second category of court records consists of Plaintiffs' Exhibit 246, which is Toyota's WIL Guideline, and twelve pages of related testimony consisting of excerpts from the trial testimony of Whitman and related deposition excerpts presented at trial of Shibata. Toyota submitted the declaration of Scott Miller, Executive Engineer at Toyota Motor Engineering & Manufacturing North America, Inc. (TEMA), in support of the motion to seal to address the WIL Guideline exhibit. Miller explained in his declaration that the WIL Guideline exhibit provides "a blueprint of the initial design of the Whiplash Injury Lessening (WIL) seat headrest, evaluation and assessment of that design in the field, the internal processes utilized to redesign Toyota products, and identifies the specifics of the redesigned, second-generation WIL headrest, and the assessment of its performance."

The Reavises filed a response in opposition to sealing these court records. CBS News and the mother of a five-year-old boy who suffered catastrophic brain

injuries after his family's Toyota Camry was rear-ended at highway speeds intervened[2] in the proceeding to oppose Toyota's motion to seal.

Although the trial court granted temporary sealing of these records, the court denied Toyota's motion for permanent sealing following a hearing on the motion to seal. The court stayed that order pending this appeal. Toyota filed a separate appeal from the court's final judgment on the verdict. That appeal remains pending before this Court. *See* appellate cause number 05-19-00075-CV.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's order denying a motion to permanently seal court records for an abuse of discretion. *Gen. Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998). The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *Upjohn Co. v. Freeman*, 906 S.W.2d 92, 95 (Tex. App.—Dallas 1995, no writ). In deciding whether or not to seal court records, the trial court must "balance the public's interest in open court proceedings against an individual litigant's personal or proprietary interest in privacy." *Nguyen v. Dallas Morning News, L.P.*, No. 02-06-00298-CV, 2008 WL 2511183, at *4 (Tex. App.—Fort Worth June 19, 2008, no pet.) (per curiam) (mem. op.) (quoting *Kepple*, 970 S.W.2d at 526); *In re Srivastava*, No. 05-17-00998-CV, 2018 WL 833376, at *4 (Tex. App.—

---

[2] Neither intervenor appeared or filed a brief in this appeal.

–6–

Dallas Feb. 12, 2018, orig. proceeding) (mem. op.) (citing *Nguyen*). "Rule 76a provides the guiding rules and principles for sealing court records." *Upjohn*, 906 S.W.2d at 95.

Court records are presumed to be open to the public. TEX. R. CIV. P. 76a. This presumption of openness recognizes the longstanding precept of American jurisprudence that "[a] trial is a public event. What transpires in the court room is public property. . . . Those who see and hear what transpired can report it with impunity." *Craig v. Harney*, 331 U.S. 367, 374 (1947). As a result, Rule 76a "states the heavy burdens which a movant must satisfy in order to secure an order sealing court records." *Boardman v. Elm Block Dev. Ltd. P'ship*, 872 S.W.2d 297, 299 (Tex. App.—Eastland 1994, no writ). Specifically, court records "may be sealed only upon a showing of all of the following:

> (a) a specific, serious and substantial interest which clearly outweighs:
>
>> (1) this presumption of openness;
>>
>> (2) any probable adverse effect that sealing will have upon the general public health or safety;
>
> (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted."

TEX. R. CIV. P. 76a(1)(a)–(b). The party seeking to seal court records must prove the elements of rule 76a(1) by a preponderance of the evidence. *Hillwood Inv. Props. III, Ltd v. Radical Mavericks Mgmt., LLC*, No. 05-11-01470-CV, 2014 WL 4294968, at *4 (Tex. App.—Dallas Aug. 21, 2014, no pet.) (mem. op.) (citing *Wood v. James*

*R. Moriarty, P.C.*, 940 S.W.2d 359, 361 (Tex. App.—Dallas 1997, no pet.)). In light of the strong presumption that all court records are open to the public, the requirements of rule 76a are to be strictly interpreted. *True & Sewell, P.C. v. Arkoma Basin Res., Inc.*, No. 05-99-00692-CV, 1999 WL 970924, at *1 (Tex. App.—Dallas Oct. 26, 1999, no pet.) (citing *Davenport v. Garcia*, 834 S.W.2d 4, 23–24 (Tex. 1992); *In re Kaiser Found. Health Plan*, 997 S.W.2d 605, 606 (Tex. App.—Dallas 1998, orig. proceeding)).

### The Trial Court's Rule 76a Findings

In denying Toyota's Rule 76a motion, the trial judge concluded:

1. "The written materials which are the subject of Toyota's motion are court records.

2. Toyota has failed to show that it possesses a specific, serious and substantial interest that would be protected through its proposed sealing order which clearly outweighs both the presumption of openness that attaches to court records and the probable adverse effect that sealing would have upon the general public health or safety.

3. Toyota failed to meet its burden to show that no less restrictive means than sealing the records from all members of the public would adequately and effectively protect the specific interests asserted. In particular, Intervenor M.G. is not a competitor of Toyota and should be afforded access."

The trial judge also made the following specific findings regarding the court records at issue:

- "Toyota failed to offer proof – beyond mere conclusory assertions – concerning any value of the alleged trade secrets contained within the [Engineering Rule exhibits and WIL Guideline exhibit]";

–8–

- "Toyota did not attempt to show that its DRBFM policy was materially different than similar policies adopted by any of its competitors, such that any competitors might derive value from learning [of the policy]";

- Toyota did not object to the admission of the Engineering Rule exhibits "on the basis of any alleged trade secrets";

- Toyota failed to seek any instruction to limit the jury's use and/or disclosure of the contents of the Engineering Rule exhibits;

- "While [the WIL Guideline] reflects design decisions made approximately 15 years ago. Toyota failed to offer proof to show the relevance - and, therefore, any value - of [the WIL Guideline] to Toyota today, especially when viewed in light of Toyota's previous representations in this case concerning the differences between Toyota's current designs and past designs"; and

- The issues raised by the Engineering Rule exhibits and the information contained in the WIL Guideline exhibit were relevant to the issues decided by the jury in this case "such that the public should be allowed to see the evidentiary basis which exists relating to the Jury's awards."

There is no dispute here regarding whether the documents at issue are court records as defined by rule 76a. TEX. R. CIV. P. 76a(2) (defining "court records"). We must, therefore, determine whether the trial judge acted unreasonably and arbitrarily in concluding that Toyota had failed to carry its burden as to at least one essential element of Rule 76a(1) as to each category of court records at issue. *See McAfee, Inc. v. Weiss*, 336 S.W.3d 840, 844–45 (Tex. App.—Dallas 2011, pet. denied); *see also Upjohn*, 906 S.W.2d at 95 ("[W]e may not disturb the trial court's decision unless it is arbitrary and unreasonable.").

–9–

## ANALYSIS

In a single issue, Toyota contends the trial court abused its discretion by denying Toyota's post-judgment motion to permanently seal the Engineering Rule exhibits and the WIL Guideline exhibit and related testimony. Toyota maintains that it met its burden under Rule 76a to obtain a permanent sealing order because the exhibits and related testimony it seeks to seal contain Toyota's trade secrets. Toyota, thus, focuses a significant portion of its briefing arguing that the court records at issue contain trade secrets and, as a result, should be permanently sealed. Toyota argues on appeal that the trial court abused its discretion by finding that the Engineering Rule exhibits and the WIL Guideline exhibit did not contain "valid Toyota trade secrets."

We need not determine whether Toyota established that the records at issue contain trade secrets or whether Toyota established a trade secret interest that rose to the level of a "specific, serious and substantial interest" in the trial court because the trial court made no such findings below. The order denying the motion to seal includes no findings that the court records include trade secrets or do not include trade secrets. The order refers only to the "alleged trade secrets." Further, the trial court did not make a separate finding that Toyota established a "specific, serious and substantial interest" under Rule 76a. Rather, the trial court found that Toyota did not pass the rule's balancing test, concluding that Toyota had "failed to show that it possesses a specific, serious and substantial interest . . . which clearly outweighs

both the presumption of openness that attaches to court records and the probable adverse effect that sealing would have upon the general public health or safety."

Moreover, even assuming the court records contain trade secrets, the existence of trade secrets standing alone is insufficient to overcome the presumption of openness and allow the records to be permanently sealed. *Compaq Comput. Corp. v. Lapray*, 75 S.W.3d 669, 674–75 (Tex. App.—Beaumont 2002, no pet.) (rejecting the argument that if a document is a trade secret, it must be sealed as a matter of law). Although "[a] properly proven trade secret interest may constitute a specific, serious, and substantial interest, which would justify restricting access to the documents in question," the trial court must still conduct the Rule 76a balancing test to determine if the trade secret interest clearly outweighs the other prescribed considerations and that there must be no less restrictive means to protect the trade secret. *Upjohn*, 906 S.W.2d at 96, 99 (citing *Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992)); *In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 614 (Tex. 1998) (orig. proceeding) ("That a document contains trade secret information is a factor to be considered in applying this sealing standard."); *Volvo Car Corp. v. Marroquin*, No. 13-06-00070-CV, 2009 WL 3647348, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 5, 2009, pet. denied) (per curiam) (mem. op.) ("Trade-secret status satisfies only the first factor in the sealing standard, and the trial court must weigh that interest against the presumption of openness and any probable adverse affects [sic] of sealing on the general public health and safety.").

As such, even assuming Toyota established that the court records contained trade secrets, Toyota was still required to prove the remaining elements of Rule 76a(1), including that (a) its interest in protecting those alleged trade secrets clearly outweighs the presumption of openness and the probable adverse effect sealing may have on the public health and safety and (b) no less restrictive means than sealing the records will adequately and effectively protect the specific interest asserted. The trial court concluded Toyota did not meet its burden of proof as to those remaining elements. We, therefore, assume without deciding that the court records at issue are trade secrets that rise to the level of "a specific, serious and substantial interest" and consider the trial court's determination that Toyota failed to prove that the alleged trade secret interest clearly outweighs the presumption of openness and the probable adverse effect sealing will have on public health and safety.

I.      **Presumption of openness and probable adverse effect on public health and safety.**

The Engineering Rule exhibits and WIL Guideline exhibit were produced in discovery subject to a protective order. The protective order provided, however, that the protections provided by the Order did not apply to the disclosure of documents or the information contained in such documents at the time of trial, either through receipt of such documents into evidence or through witness testimony. The Reavises argue that Toyota waived any alleged trade secret protection afforded these exhibits when they were admitted into evidence at trial and the jury was not instructed to

–12–

refrain from discussing the exhibits or their contents with the public following the jury's discharge from service.  We agree.

"A properly proven trade secret interest may constitute a specific, serious, and substantial interest, which would justify restricting access to the documents in question." *Upjohn*, 906 S.W.2d at 96. "With respect to a trade secret, the right to exclude others is central to the very definition of the property interest. Once the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984). "It is well established that the release of information in open court 'is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use.'" *Title Source, Inc. v. HouseCanary, Inc.*, 603 S.W.3d 829, 842 (Tex. App.—San Antonio 2019, pet. granted) (C.J. Marion, concurring) (citing *Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) (quoting *Nat'l Polymer Prods. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981)). For these reasons, a party's duty to protect public disclosure of its alleged trade secrets does not cease when the party goes to trial if the party intends to seek protection of those secrets in the future. And a party's failure to take adequate steps to protect its alleged trade secrets from public disclosure during trial impedes the party's ability to show that its purported interest in maintaining secrecy clearly outweighs the presumption of openness for purposes of obtaining a Rule 76a sealing order. *E.g.*, *Marroquin*,

–13–

2009 WL 3647348, at \*4 (affirming trial court's denial of motion to seal where Ford failed to take steps to prevent disclosure of documents in open court and, as such, Ford's presumed interest in maintaining the documents' secrecy did not "clearly outweigh" the presumption of openness); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 905 S.W.2d 683, 686 (Tex. App.—Texarkana 1995, no writ) (trial court did not abuse its discretion by denying motion to seal where court records had been presented during open trial and already publicly disclosed during that trial and in other litigation); *see also Stroud Oil Props., Inc. v. Henderson*, No. 02-03-00003-CV, 2003 WL 21404820, at \*3 (Tex. App.—Fort Worth June 19, 2003, pet. denied) (mem. op.) (party waived privileged information by disclosing it in open court and failed to show a specific, serious and substantial interest in sealing the record as is required under rule 76a). Toyota failed to protect its purported interest here.

The trial court pre-admitted the Engineering Rule exhibits into evidence. Although Toyota asserted a relevance objection to the admission of those exhibits, Toyota at no time during trial objected on the basis of trade secret status or Toyota's purported interest in protecting its alleged trade secrets from public disclosure. The fact that these exhibits were not specifically discussed during trial or formally published to the jury during witness testimony does not change this analysis. The exhibits were admitted into evidence, were available to the jury during deliberations, and are, therefore, part of the publically available trial record. As for Plaintiff's Exhibit 246, the WIL Guideline Exhibit, although Toyota objected to the admission

–14–

of that exhibit and took steps to protect its public disclosure by having the courtroom closed when the exhibit was discussed, Toyota waived any protection of that information by allowing the information contained in the exhibit to come in through other exhibits and testimony. The trial court found that the substantive content of Exhibit 246 was not materially different from content contained in other materials such as Plaintiffs' Exhibit 321 that Toyota concedes do not contain trade secrets. After comparing Exhibit 246 with Exhibit 321, we conclude the trial court did not abuse its discretion in making this finding. Toyota also complains that its evolving strategy to re-design its seats to address whiplash risks and injuries was a trade secret included in the WIL Guideline exhibit and in the related testimony that was not found in other exhibits admitted at trial. In Shibata's live trial testimony, however, which Toyota did not seek to seal, Shibata testified to that evolving strategy to re-design the seats to address whiplash risks. By allowing the information contained in these court records to be disclosed in open court either without trade secret objection or through other exhibits or witness testimony, we conclude Toyota waived its purported right to seek protection of these court records, and any interest in maintaining the documents' secrecy does not "clearly outweigh" the presumption of openness.

Further, Toyota took no steps to prevent the jury from disclosing the contents of the exhibits to the public after they were discharged from duty. "A trial is a public event. What transpires in the court room is public property. . . . Those who see and

–15–

hear what transpired can report it with impunity." *Craig*, 331 U.S. at 374. When the trial judge discharged the jury here, he instructed the jurors that they "may discuss this case with anyone you choose. . . ." Toyota did not object to this instruction or request any instructions prohibiting the jury from discussing the court records at issue here. By failing to request that the jury be instructed not to disclose or discuss those court records, we cannot say the trial court abused its discretion by concluding that Toyota's interest in protecting the contents of those exhibits clearly outweighed the preemption of openness. *See Marroquin*, 2009 WL 3647348, at *4 (affirming refusal to seal exhibits where movant failed to request a jury instruction directing the jury, once discharged, not to discuss matters that the court seeks to protect from public disclosure)

Because Toyota did not take adequate steps during trial to protect the exhibits and related testimony from public disclosure and did not seek an instruction prohibiting the jury and other non-parties from discussing the documents beyond the setting of the trial, we conclude any interest Toyota had in maintaining secrecy of the records does not "*clearly* outweigh" the presumption of openness. *See* TEX. R. CIV. P. 76a(1) (emphasis added); *see also Marroquin*, 2009 WL 3647348, at *4 (trial court did not abuse its discretion by denying Ford's motion to seal under similar facts) (citing Rule 76a(1) and TEX. R. EVID. 507) (noting that when disclosure of trade secrets is ordered, "the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may

–16–

require.")); *Burlington N. R.R. Co.*, 905 S.W.2d at 686 (affirming trial court's ruling that the movant's interest in confidential documents, admitted into evidence and presented to the jury, did not outweigh presumption of openness).

Further, the trial court did not abuse its discretion in finding that Toyota failed to show that Toyota's interest in protecting its alleged trade secrets clearly outweighed the probable adverse effect on the public health and safety. In the trial court, Toyota maintained the records it sought to seal contained trade secrets that did not relate to the central issues in the case. Toyota argued that, as a result, its interest in protecting those documents from disclosure outweighed any probable risk of harm to the public. In contrast to those unsubstantiated assertions, however, the trial court had before it evidence from which the court could reasonably conclude that the information in the court records was relevant to public safety and the issues tried in this case.

For example, the intervenors presented evidence showing multiple cases in which children suffered "an identical injury" to that sustained by the Reavis children. The trial court also had the benefit of two weeks of trial testimony and evidence and a jury verdict finding Toyota grossly negligent. Further, the Reavises argued that the exhibits at issue were directly related to the claims against Toyota. The Engineering Rule exhibits showed basic engineering principles that Toyota claimed to follow in the design process but did not follow when designing the WIL seats and discovering

–17–

the risk of ramping. Similarly, the WIL Guideline was probative of the decisions Toyota made and failed to make regarding seat design.

We cannot conclude the trial court abused its discretion in finding that Toyota's purported interests did not clearly outweigh the public's interest in these court records. The trial court did not abuse its discretion in finding that the court records were relevant to the issues decided by the jury "such that the public should be allowed to see the evidentiary basis which exists relating to the Jury's awards." Moreover, the trial court based its decision on conflicting evidence. Consequently, there can be no abuse of discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (discretion is not abused when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision); *Ridgeway v. Burlington N. Santa Fe Corp.*, 205 S.W.3d 577, 581 (Tex. App.—Fort Worth 2006, pet. denied) (a trial court does not abuse its discretion when it bases its decision on conflicting evidence) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

Assuming without deciding that the court records at issue contain trade secrets, we conclude Toyota did not carry its burden under rule 76a and failed to overcome the presumption of openness and the consideration of the probable adverse effects of sealing on the public health and safety.

## II. Less restrictive means

In addition to its burden to prove that its interest overcame the presumption of openness and the probable adverse effect on public health or safety, Toyota also had the burden to demonstrate that "no less restrictive means than sealing records will adequately and effectively protect" its interest. *See* TEX. R. CIV. P. 76a(1); *see Compaq Computer Corp.*, 75 S.W.3d at 675. In its motion to seal, Toyota relied on the declarations of Shibata and Miller to argue that sealing the documents in total was the only means to protect the Toyota's interest. According to Shibata, "[a]side from their cover pages, each page of [the Engineering Rule exhibits] reflects the detailed DRBFM process created and utilized by TMC in vehicle design." Toyota argued below that because each page reflects the DRBFM process, "[a]ny redactions would be meaningless, as every page of each document would have to be redacted in its entirety." Similarly, Miller stated that the "entire [WIL Guideline] constitutes a blueprint of Toyota's design processes and methodology." According to Toyota, like the Engineering Rule exhibits, redaction would be meaningless on the WIL Guideline because the entire document is a trade secret. On appeal, Toyota argues that because the exhibits are trade secrets and the related testimony describes the trade secrets, "there is no reasonable way to further limit the protections without exposing the trade secrets."

Beyond Toyota's blanket assertions that a total seal is necessary and redaction would be meaningless, Toyota did not offer any additional testimony or evidence

regarding whether the Toyota documents could be redacted or otherwise altered while still protecting its interest. Toyota also contends on appeal that it showed sealing was the least restrictive means to protect its interest here because it sought to seal "just four exhibits from a trial involving over 900 exhibits and [covering] 12 pages of closed-courtroom testimony from more than 3,200 pages of trial transcripts." This argument misses the point. Rule 76a imposes strict requirements to obtain a sealing order, and parties are not rewarded with a sealing order simply because they ask the court to only seal a few exhibits or a small amount of testimony. No matter how many exhibits a party seeks to seal, that party must still meet the requirements of the rule. We conclude Toyota failed to do so here. We affirm the trial court's order denying the motion to seal.

## CONCLUSION

Toyota failed to show that its purported interest in protecting the court records clearly outweighs the presumption of openness and any probable adverse effect that sealing will have upon the general public health or safety, and failed to demonstrate that no less restrictive means would protect its interest. We, therefore, find the trial court did not abuse its discretion by denying Toyota's motion to seal. Accordingly, we affirm the trial court's order denying Toyota's Rule 76a motion for permanent

sealing order.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

190284F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TOYOTA MOTOR SALES, U.S.A., INC. AND TOYOTA MOTOR CORPORATION, Appellants

No. 05-19-00284-CV      V.

BENJAMIN THOMAS REAVIS AND KRISTI CAROL REAVIS, INDIVIDUALLY AND AS NEXT FRIENDS OF E.R. AND O.R., MINOR CHILDREN, Appellees

On Appeal from the 134th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-16-15296. Opinion delivered by Justice Partida-Kipness. Justices Myers and Reichek participating.

In accordance with this Court's opinion of this date, the trial court's March 6, 2019 "Order Pursuant to Rule 76a" is **AFFIRMED**.

It is **ORDERED** that appellees BENJAMIN THOMAS REAVIS AND KRISTI CAROL REAVIS, INDIVIDUALLY AND AS NEXT FRIENDS OF E.R. AND O.R., MINOR CHILDREN recover their costs of this appeal from appellants TOYOTA MOTOR SALES, U.S.A., INC. AND TOYOTA MOTOR CORPORATION.

Judgment entered this 4th day of February, 2021.